RUSS, AUGUST & KABAT
Marc A. Fenster, SBN 181067
mfenster@raklaw.com
Irene Y. Lee, SBN 213625
ilee@raklaw.com
Stanley H. Thompson, SBN 198825
sthompson@raklaw.com
Jean Y. Rhee, SBN 234916
jrhee@raklaw.com
Jeffrey Z.Y. Liao, SBN 288994
jliao@raklaw.com
12424 Wilshire Boulevard
Twelfth Floor
Los Angeles, California 90025
Telephone: (310) 826-7474
Facsimile: (310) 826-6991

Attorneys for Plaintiffs
VIA TECHNOLOGIES, INC., a California corporation, VIA TECHNOLOGIES, INC., a Taiwan corporation, and VIA LABS, INC., a Taiwan corporation

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| VIA TECHNOLOGIES, INC., a California corporation, VIA TECHNOLOGIES, INC., a Taiwan corporation, and VIA LABS, INC., a Taiwan corporation<br><br>Plaintiffs,<br><br>vs.<br><br>ASUS COMPUTER INTERNATIONAL, a California corporation, ASUSTEK COMPUTER INC., a Taiwan corporation, and ASMEDIA TECHNOLOGY INC., a Taiwan corporation,<br><br>Defendants. | **Case No. 5:14-cv-03586**<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**<br><br>**DEMAND FOR JURY TRIAL** |

3329-3 140807 Complaint 240pm.docx

**COMPLAINT**

  Plaintiffs VIA Technologies, Inc., a California corporation ("VIA-US"), VIA Technologies, Inc., a Taiwan corporation ("VIA-TW"), and VIA Labs, Inc., a Taiwan corporation ("VLI") (collectively, "Plaintiffs" or "VIA") allege for their Complaint against ASUS Computer International, a California corporation ("ACI"), ASUSTeK Computer Inc., a Taiwan corporation ("ASUS-TW"), and ASMedia Technology Inc., a Taiwan corporation ("ASM") (collectively, "Defendants"), as follows:

  1. VIA brings this action to put an end to Defendants' continued willful infringement and wrongful commercial exploitation of some of VIA's most valued intellectual property relating to USB 3.0, which Defendants misappropriated through a carefully-orchestrated scheme, and have been knowingly and actively using to unfairly compete with VIA for the past several years.

  2. VIA's internal investigation and criminal investigations by prosecutors in Taiwan uncovered a scheme hatched by Defendants in at least as early as 2007 to copy VIA's notable success in the development of USB technology, and boost their own flagging sales at VIA's expense, by inducing various VIA employees – including a then-VIA Vice-President, Chewei Lin – to steal VIA's highly confidential and proprietary trade secret information relating to USB 3.0 controller chip technology, and defect to high-level positions with the Defendants.

  3. As a result of this mass theft and defection, ASM went from being a digital photo frame manufacturer with no USB-related products to mass producer of complex USB 3.0 chips virtually overnight, a highly suspicious circumstance that prompted the Taiwanese prosecutors currently pursuing criminal charges against ASM and its employees to state that, "it is extremely difficult to develop and take such chips into mass production in such a short time frame [of one year between ASM's announcement of its intent to start developing high-speed I/O products in 2008, and its move to mass production in 2009]." This abrupt change in ASM's product focus also coincided with a marked improvement in its financial situation whereby it went from having less than US$10M in sales and reporting net operating losses for at least three consecutive years starting in 2007, to more than doubling its sales and reporting positive net

operating income starting in 2010.

4. ASUS-TW, which has been the single largest customer for ASM's USB host controller products, has also benefitted directly from this illegal scheme by incorporating the USB 3.0 products that ASM created using VIA's trade secrets into its motherboards, desktop computers, and laptop computers, and thereby dramatically increased its own sales, including sales made in the United States through ACI, which also doubled in the same timeframe. In addition, as the majority shareholder of ASM, ASUS-TW also generates tremendous profits from ASM's increased sales.

5. By misappropriating and infringing VIA's intellectual property, Defendants have willfully and maliciously violated VIA's rights in its trade secrets and patents and engaged in unfair competition, which should be enjoined.

## THE PARTIES

6. Plaintiff VIA-US is a California corporation with its principal place of business at 940 Mission Court, Fremont, California 94539.

7. Plaintiff VIA-TW is a Taiwan corporation with its principal place of business at 8F, No. 533, Zhongzheng Rd., Xindian District, New Taipei City 231, Taiwan.

8. Plaintiff VLI is a Taiwan corporation with its principal place of business at 7F, No. 529-1, Zhongzheng Rd, Xindian District, New Taipei City 23148, Taiwan.

9. On information and belief, Defendant ACI is a California corporation with its principal place of business at 800 Corporate Way, Fremont, California 94539. On information and belief, ACI can be served through its registered agent, C T Corporation System, 818 West Seventh Street, Los Angeles, California 90017. On information and belief, ACI is ASUS-TW's alter ego and exclusive sales and marketing agent in California and North America.

10. On information and belief, Defendant ASUS-TW is a Taiwan corporation with its principal place of business at 15, Li-Te Road, Beitou District, Taipei City, Taiwan. On information and belief, ASUS-TW does substantial business on an ongoing basis, on its own behalf and for its majority-owned subsidiary ASM, in the United States, including in this state

and in this district, through its wholly-owned subsidiary, ACI, which is also named as a defendant in this action.

11.    On information and belief, Defendant ASM is a Taiwan corporation with its principal place of business at 6F, No. 115, Minquan Rd., Xindian District, New Taipei City 231, Taiwan. On information and belief, ASUS-TW and its affiliates owned over 90% of the shares of ASM at the beginning of the timeframe relevant to this Complaint, and continue to own a majority of the shares of ASM today. Also on information and belief, ASM does substantial business on an ongoing basis in the United States, including in this state and in this district, both directly, as well as through distributors and its sister company, ACI, which is a wholly-owned subsidiary of ASUS-TW and another named defendant in this action.

12.    Plaintiffs are informed and believe and thereon allege that at all pertinent times herein mentioned, Defendants, and each of them, were the agents, servants, employees, representatives and/or alter egos of their Co-Defendants and, in doing the things hereinafter alleged, were acting within the course and scope of such agency and with the permission and consent of their Co-Defendants. Defendants, and each of them, had and have actual or constructive knowledge of the events, transactions and occurrences alleged herein, and either knew or should have known of the conduct of their Co-Defendants and cooperated in, benefited from and/or ratified such conduct. For example, on information and belief, ASUS-TW is and has always been the 100% shareholder of ACI, and has kept ACI grossly undercapitalized at all times relevant to this Complaint, with ACI consistently reporting a negative net worth and only around US$500,000 or less in capital since at least 2007, while having annual sales ranging from around US$400 million up to over US$2 billion during the same timeframe. Also on information and belief, the Chairman of ASUS-TW, Jonney Shih, has also been a director of ACI since at least 2007, and Jerry Shen, the Chairman of ASM, has also been an ASUS-TW director since at least 2007, the President and/or CEO of ASUS-TW since at least 2008, and is currently the General Manager of the ASUS-TW motherboard business unit. ASUS-TW and ACI have also had a number of other common officers and directors during the exact same timeframe, including, but not limited to, Jackie Hsu and Eric Chen. Also, on information and

belief, ASM President and Director, Chewei Lin, was an ASUS-TW Vice President and the General Manager of the ASUS-TW motherboard business unit until July of 2012.

## JURISDICTION

13. This is an action for injunctive relief and to recover damages arising under the patent laws of the United States, 35 U.S.C. § 1, et seq., including § 271. This Court has original jurisdiction over the subject matter under 28 U.S.C. §§ 1331 and 1338(a) and (b) and supplemental pendent jurisdiction over Plaintiffs' state-law causes of action under 28 U.S.C. § 1367.

14. This Court has general jurisdiction over ACI because ACI is incorporated under California law and has its principal place of business in this District.

15. This Court has personal jurisdiction over ASUS-TW and ASM because, on information and belief, ASUS-TW and ASM have conducted and continue to conduct a substantial amount of business in this District, have committed and continue to commit acts of patent infringement in this District, and/or have harmed and continue to harm Plaintiffs in this District, by, among other things, using, selling, offering for sale, and/or importing infringing products and services in this District.  In particular, Defendants have purposefully availed themselves of the benefits of California's laws and of the privilege of conducting business in California by directing into California USB 3.0 controller chips, and motherboards and computers containing USB 3.0 controller chips, embodying, or created using, VIA's patented technology and/or misappropriated trade secrets. On information and belief, ASM and ASUS-TW are continuing to import to, and market and sell in, California (and elsewhere in the United States), products and services that embody Plaintiffs' patented technology and trade secrets, or that were made using VIA's patented or trade secret designs, either directly, or through their agent and/or alter ego ACI and others.  As a result of Defendants' intentional conduct directed toward California, Plaintiffs have suffered injury in California and elsewhere in the United States.

16. Venue is proper in this District under 28 U.S.C. §§ 1391(b)-(d) and 1400(b) because, among other reasons, Defendants are subject to personal jurisdiction in this District,

and have committed and continue to commit acts of patent infringement in this District. On information and belief, for example, Defendants have used, sold, offered for sale, and/or imported infringing and misappropriated products or services to customers who reside in, or may be found in, this District, and because Defendants unfairly compete with VIA within this District.

## COMMON FACTUAL ALLEGATIONS

### A. VIA IS A WORLDWIDE LEADER IN CHIPSET SOLUTIONS AND ONE OF THE OLDEST AND MOST PROMINENT COMPANIES OF ITS KIND.

17. Founded in 1987, VIA has a long history in the electronics industry as the leading developer and manufacturer of integrated chipsets for PCs and peripherals.

18. As the world's largest independent manufacturer of motherboard chipsets, VIA has long recognized the potential in USB as an extremely efficient and universal means of data transfer.

19. This action concerns VIA's USB 3.0 controller chip technology, which includes analog design schematics for the high speed input-output (I/O) modules that are used in hub controller chips, host controller chips, and device controller chips to implement the USB 3.0 high-speed serial transfer protocol, such as PCI-e (Peripheral Component Interconnect Express), SATA (Serial Advanced Technology Attachment), and SSC (Spread Spectrum Clock Generator), and related legacy technologies for USB 1.0/1.1/2.0 (collectively, "USB 3.0 Technology").

20. USB 3.0 is the third major version of the Universal Serial Bus (USB) standard for computer connectivity. Among other improvements, USB 3.0 adds a new transfer mode called "SuperSpeed" (SS), capable of transferring data at up to 5 Gbit/s (625 MB/s), which is more than ten times as fast as the 480 Mbit/s (60 MB/s) high speed of USB 2.0.

21. In as early as May 1997, VIA first incorporated USB 1.0 technology into its award-winning core logic chipsets, starting with the VT82C586B chipset. In or around March 2001, VIA released its first chipset with USB 1.1 support – *i.e.*, the VT82C686A. Both of these

products were released by VIA long before the proliferation of USB-enabled PC peripherals in the market.

22. In or around November 2001, with the introduction of USB 2.0 and the VIA Vectro VT6202 4-port host controller, VIA became one of the first companies to satisfy the requirements for higher bandwidth peripheral devices.

23. By developing and supplying both integrated and discrete solutions for PCs and peripheral devices, VIA was a leader in driving the industry transition to the enhanced USB 2.0 standard.

24. VIA has channeled a tremendous amount of resources into research and development and has actively pursued power efficiency across its entire silicon portfolio. As a result, VIA has developed a complete line of VIA Vectro USB 2.0 controllers, integrating advanced power management features into a low power package.

25. In recognition of its contribution to power efficiency, VIA was awarded the world's first Low Power certification by the USB Implementers Forum.

26. VIA's significant investments in research and development have also garnered VIA over 2,200 issued patents and patent applications in the United States alone, including the patent at issue here.

27. The trade secret components of VIA's USB 3.0 Technology are not accessible to the public or any third party through any public channels, and VIA has never publicly disclosed this information to the public. These trade secrets are core, critical components of VIA's product offerings, the culmination of well over a decade of research and development, and have brought significant economic benefit to VIA.

28. VIA has at all relevant times taken extensive steps to protect the trade secrets relating to its USB 3.0 Technology, including not only contractual measures, but also technological and procedural measures. VIA requires all employees to sign non-disclosure agreements, and limits access to its trade secrets only to those employees who need it in order to perform their job functions. To the extent that VIA's licensees, vendors, joint venturers, or customers need access to VIA's trade secrets, they are likewise required to execute non-

disclosure agreements.  All IC design at VIA is done on secure workstations without Internet access that can only be accessed by first logging into the company intranet.  Even then, each designer is only given access to the specific folders on these workstations that he or she needs in order to work on his or her assigned projects.  Normally, designers have no authority to download schematics from these secured workstations, and can only obtain approval to do so from high-level executives.

**B.   DEFENDANTS METHODICALLY ORCHESTRATED THE MISAPPROPRIATION OF VIA'S TRADE SECRETS AND WILLFULLY INFRINGED VIA'S PATENTS.**

29.   In October 2007, a former Vice President of VIA, Chewei Lin, left VIA to become President and Director of ASM.  Dozens of other VIA employees, including senior product managers and R&D engineers, also joined ASM at around the same time, including Chi Chang, who is now the head of research and development at ASM.  On information and belief, the majority of current ASM analog designers, production control staff, and product managers are from VIA.

30.   As a result of ASM's mass raiding of VIA's employees, the former employees of VIA who joined ASM collectively had knowledge of substantially all of VIA's confidential trade secret information relating to USB 3.0 Technology, including hub controller chips, host controller chips, and device controller chips.

31.   VIA's internal investigation has revealed that former VIA employees who joined ASM downloaded and printed numerous circuit diagrams for high speed controller integrated circuits (ICs) from VIA's workstations while such employees were still employed by VIA.

32.   Prior to the migration of VIA's former employees to ASM in 2007, ASM had no expertise in the high-speed I/O field at all, including with the legacy USB 1.0/1.1/2.0 technologies critical to implementing the USB 3.0 protocol.  Rather, ASM's original business since its founding in 2004 was making digital photo frames.  Nevertheless, in 2008, shortly after luring away VIA's former employees, ASM announced that it would start to develop high speed I/O products, including USB 3.0 products and was able to take USB 3.0 device controller chips into mass production in 2009, approximately one year later.  In 2010, ASM also launched USB

3.0 host controller chips. In January 2011, ASM, who previously had only sought trademark protection for marks used in connection with a narrow subset of digital photo frame-related products and accessories, filed applications in both Taiwan and the United States to register a trademark for use in connection with a wide range of ICs and high speed I/O products.

33. According to the Prosecutor in the criminal proceedings against ASM in Taiwan, "it is extremely difficult to develop and take such chips into mass production in such a short time frame [of one year]." *See* http://online.wsj.com/article/PR-CO-20131217-906634.html. This feat could have been accomplished by ASM only through its reliance on proprietary technical and operational information misappropriated from VIA.

34. VIA's reverse engineering of ASM's chips confirmed that ASM's chips, for example, the ASM1042, ASM1042A, and ASM1051, have schematics that are substantially similar to the analog designs in VIA's chips.

35. On August 21, 2012, VIA filed a criminal complaint with the Taipei District Prosecutor's Office charging ASM and its employees with stealing VIA's USB 3.0 Technology.

36. Based on the reverse engineering reports presented to prosecutors in Taiwan, raids of ASM's offices were conducted by Taiwan police on August 30, 2012, and again on April 16, 2013. During these raids, copies of VIA's confidential and proprietary schematics—prominently displaying VIA's federally registered trademark and logo—were discovered in ASM's offices, along with copies of ASM's schematics for its ASM1042 and ASM1051 chips, which the Taiwanese prosecutors reviewed and concluded were substantially similar to VIA's schematics.

37. On November 8, 2013, the Taipei District Prosecutor's Office concluded its investigation and announced that it was proceeding with the criminal prosecution of ASM and four ASM employees, including former VIA employee, Chi Chang, the head of research and development at ASM.

38. On December 17, 2013, VIA filed a civil suit against ASUS-TW and ASM in the Taipei District Court seeking damages for the losses incurred as a result of their theft of VIA's USB 3.0 Technology. Also named in the Taiwan suit are various ASM employees, including

ASM Chairman, Jerry Shen, who is also the CEO and a director of ASUS-TW, and ASM President and director, Chewei Lin, who was also the General Manager of the ASUS-TW motherboard business unit during the relevant timeframe at issue in this Complaint.

39. As part of the Taiwan suit, VIA is also requesting the court to enjoin ASM from producing and selling products developed using VIA's misappropriated trade secrets.

40. ASUS-TW is the largest single customer of ASM's USB 3.0 host controller chips, which are incorporated into motherboards, desktop computers, and laptop computers made and sold by ASUS-TW.

41. Thus, as ASUS-TW is the controlling shareholder of ASM, has had and continues to have directors and officers in common with ASM and ACI, and derives substantial direct economic benefits from ASM's misappropriation of VIA's trade secrets by incorporating large volumes of ASM's USB chips into ASUS-TW's products, which are then sold in this District, in California, and throughout the United States by ASUS-TW's wholly-owned subsidiary, alter ego, and exclusive sales and marketing agent, ACI, the wrongful acts of ASM described herein should be imputed to ASUS-TW and ACI as well.

## COUNT I

## INFRINGEMENT OF U.S. PATENT NO. 7,313,187

42. Plaintiffs incorporate Paragraphs 1-41 above as if fully set forth herein.

43. United States Patent No. 7,313,187 (the "'187 patent"), entitled "High-speed serial linking device with de-emphasis function and the method thereof," issued on December 25, 2007 from United States Patent Application No. 10/856,044, filed on May 28, 2004, which claims priority to Taiwan application Serial No. 092120025, filed Jul. 22, 2003. VIA is the assignee of the '187 patent, which was invented by Chi Chang while still employed at VIA, and the application for which was pending when he defected from VIA to become ASM's head of research and development. A true and correct copy of the '187 patent is attached as Exhibit A.

44. ASM has had knowledge of the '187 patent since at least as early as October 2007, when Chi Chang, the inventor of the '187 patent left VIA and became ASM's head of research and development. Further, ASM's knowledge can be imputed to ASUS-TW as of

October 2007 through the common officers and directors shared by ASM and ASUS-TW at that time, including, but not limited to, Jerry Shen, who was both the Chairman of ASM and an ASUS-TW director, and Chewei Lin, who left VIA at around the same time as Chi Chang and was both President and Director of ASM and the General Manager of the ASUS-TW motherboard business unit. ASM and ASUS-TW's knowledge can also be imputed to ACI as of October 2007 through the common officers and directors shared by ASUS-TW and ACI at that time, including, but not limited to, Jonney Shih, who was both the Chairman of ASUS-TW and Director of ACI, and Jackie Hsu, who was both the President of ACI, and an executive of ASUS-TW.

45. With the above-described knowledge of the '187 patent, Defendants directly infringed and continue to directly infringe one or more claims of the '187 patent, in this judicial District and elsewhere in the United States, by, among other things, making, using, selling, offering for sale, and/or importing into the United States a high-speed serial linking device with de-emphasis function, comprising: a parallel-to-serial unit which receives a parallel data to serialize the parallel data into a serial data and a delayed serial data, wherein the delayed serial data is one serial bit time lag behind the serial data; a pre-driver which receives the serial data and the delayed serial data to output a data differential pair according to the serial data and output a delayed-and-inverted differential pair according to the delayed serial data, wherein the delayed-and-inverted differential pair is the inverse of and one serial bit time lag behind the data differential pair; and an output driver unit which receives the data differential pair and the delayed-and-inverted differential pair to output a de-emphasized transmission differential pair. Upon information and belief, Defendants' infringing devices include the ASM1042, ASM1042A, ASM1051, ASM1051E, ASM1051U, ASM1053, ASM1054, and ASM1074 ("Infringing Chips"), as well as motherboards, computers, and other products containing the same.

46. With the above-described knowledge of the '187 patent, Defendants have also contributed to and continue to contribute to the infringement of one or more claims of the '187 patent by others, including OEM and end-user customers and other distributors, under 35 U.S.C.

§ 271(c) by importing, offering to sell, and selling the above-described Infringing Chips made and sold by ASM and/or devices made and sold by ASUS-TW that incorporate the above-described Infringing Chips made and sold by ASM, knowing that the above-described Infringing Chips made and sold by ASM are especially made or adapted to embody the invention described in the '187 patent and/or to enable the practice of high-speed serial linking transmissions with de-emphasis function in a manner that infringes the '187 patent, and further knowing that these devices are not staple articles or commodities of commerce suitable for substantial non-infringing uses.

47. By engaging in the conduct described herein, Defendants have injured Plaintiffs and are thus liable for infringement of the '187 patent pursuant to 35 U.S.C. § 271.

48. Defendants have committed these acts of infringement without license or authorization.

49. As a result of Defendants' infringement of the '187 patent, VIA has suffered monetary damages and is entitled to a money judgment in an amount adequate to compensate for Defendants' infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendants, together with interest and costs as fixed by the Court.

50. Furthermore, because Defendants have committed these acts of infringement willfully, wantonly, and deliberately with notice of the '187 patent, VIA seeks enhanced damages pursuant to 35 U.S.C. § 284 and a finding that this is an exceptional case within the meaning of 35 U.S.C. § 285, entitling VIA to its attorneys' fees and expenses.

51. VIA has also suffered and will continue to suffer severe and irreparable harm unless this Court issues a permanent injunction prohibiting Defendants, their agents, servants, employees, representatives, and all others acting in active concert therewith from infringing the '187 patent. In particular, Defendants' disregard for VIA's property rights threatens VIA's relationships with the actual and potential licensees of this intellectual property, inasmuch as Defendants will derive a competitive advantage over any of VIA's current or future licensees by using VIA's patented technology without paying compensation for such use. Accordingly, unless and until Defendants' continued acts of infringement are enjoined, VIA will suffer

further irreparable harm for which there is no adequate remedy at law.

## COUNT II

### Trade Secret Misappropriation Under Cal. Civil Code §§ 3426 *et seq.*

52. Plaintiffs incorporate Paragraphs 1-51 above as if fully set forth herein.

53. VIA developed, is the owner of, and was, at all relevant times, in possession of technical and operational trade secrets relating to USB 3.0 Technology. These include, but are not limited to, chip design schematics.

54. VIA's USB 3.0 Technology trade secrets are proprietary to VIA, not generally known to the public or others who can obtain economic value from their disclosure or use, and VIA derives independent economic value from the fact that they are not generally known to the public because they enable VIA to maintain a leadership position in its industry and to make and sell high-performance motherboard chipsets to meet its customers' needs.

55. VIA has made, and continues to make efforts that are reasonable under the circumstances to secure the secrecy of its trade secrets relating to its USB 3.0 Technology by, among other things, restricting access to the trade secret information to only those persons who need it, requiring all persons who access the trade secrets to execute non-disclosure agreements, developing and storing the trade secrets only on secure, non-Internet-connected workstations with restrictions on downloading.

56. Defendants misappropriated VIA's trade secrets by improper means. Those improper means include, without limitation, (a) inducing VIA employees to steal and disclose to Defendants trade secrets in violation of the employees' non-disclosure agreements with VIA, and (b) receiving and using VIA's trade secrets for the benefit of Defendants while knowing, or having reason to know, that they had been acquired by unlawful means, such as by breach of a contractual responsibility or fiduciary duty, or by corporate espionage.

57. On information and belief, Defendants have used and continue to use VIA's trade secrets, without its consent while knowing, or having reason to know, that Defendants' knowledge of VIA's trade secrets was derived from others who used improper means to acquire the trade secrets or who owed a duty to VIA to maintain the secrecy of the trade secrets or to

limit their use, or was acquired under circumstances giving rise to a duty by Defendants to maintain or limit the use of such trade secrets.

58. On information and belief, Defendants have used their knowledge of VIA's trade secrets to design integrated circuits, including the Infringing Chips, to develop, make and sell products and services for the California and U.S. market, to establish a significant market presence in California, U.S. and world markets in astonishingly short order, to price their products at a substantial discount to what would have been possible had Defendants incurred their own research and development and ramp up expenses, and to compete directly and unfairly with VIA.

59. Defendants' wrongful conduct in misappropriating VIA's trade secrets, unless and until enjoined and restrained by this Court, will greatly and irreparably injure VIA's business.

60. VIA has no adequate remedy at law for its present and threatened future injuries. This is particularly true because Defendants' use of VIA's trade secrets has allowed Defendants to penetrate a valuable market in an unnaturally short time, and to steal customers' business directly from VIA. VIA, therefore, is entitled to injunctive relief prohibiting Defendants from continuing their use of VIA's trade secrets and confidential information to manufacture and sell USB 3.0 chips and products containing USB 3.0 chips for importation into the United States and elsewhere, and compelling Defendants to return all materials incorporating, disclosing, or derived from improperly acquired knowledge of such secrets.

61. VIA is entitled to damages for the actual loss caused by Defendants' misappropriation of its trade secrets, and/or for any unjust enrichment Defendants have enjoyed by such misappropriation.

62. Defendants' misappropriation of VIA's trade secrets was willful and malicious. California Civil Code Sections 3426.3(c) and 3426.4 thus entitle VIA to an award of exemplary damages equal to twice its actual damages caused by the misappropriation, as well as VIA's reasonable attorneys fees.

//

## COUNT III

**Unfair Competition Under Cal. Bus. & Prof. Code § 17200 et seq.**

63. Plaintiffs incorporate Paragraphs 1-62 above as if fully set forth herein.

64. By virtue of the misconduct described herein, Defendants have engaged in and continue to engage in unlawful, unfair, and/or fraudulent business acts and practices within the meaning of California Business and Professions Code Section 17200.

65. Defendants have acted in a way to restrain competition or the free exercise of business activity.

66. Defendants' misappropriation and use of VIA's trade secrets were and are unlawful because, as set forth above, they are violations of the California Uniform Trade Secrets Act, California Civil Code Sections 3426 et seq.

67. Defendants' misappropriation and use of VIA's trade secrets and willful infringement of VIA's patent constitute an unfair attempt to gain an undeserved competitive edge against VIA and its licensees, and have caused harm to VIA that is immoral unethical, oppressive, and offensive to public policy, and which outweighs any possible utility such misappropriation and use might have.

68. The natural, probable, and foreseeable result of Defendants' conduct has been and will continue to be to injure VIA's businesses, to impose substantial expenses on VIA to counteract that conduct, and to injure and damage VIA in other ways.

69. Defendants have used this unfair business practice to their advantage, taking customers and substantial lucrative contracts away from VIA, and causing substantial price erosion as to VIA products and sales. Defendants have unfairly profited, and will continue to unfairly benefit, as a result of these acts of unfair competition.

70. Unless restrained and enjoined, Defendants will continue to irreparably harm VIA. VIA has no adequate remedy at law, and money damages cannot fully compensate them for the injury to their business. VIA is thus entitled to injunctive relief prohibiting Defendants from disclosing or continuing to use VIA's proprietary trade secrets to further their competing enterprise.

# PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court grant them the following relief:

A. A judgment in favor of VIA that Defendants have infringed the '187 patent;

B. A permanent injunction enjoining Defendants and their officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from infringement of the '187 patent, or such other equitable relief the Court determines is warranted;

C. Preliminary and permanent injunctive relief pursuant to which Defendants and their employees, or representatives, and all persons acting in concert or participating with them are commanded, enjoined, or restrained, directly or indirectly, by any means whatsoever, as follows:

i. From using VIA's trade secrets and other proprietary information to manufacture, offer to sell, or sell products or services incorporating, using, or made using VIA's trade secrets;

ii. From disclosing VIA's trade secrets and proprietary information;

iii. Immediately to preserve and return to VIA (i) all information, including trade secret and other confidential or proprietary information improperly acquired from VIA; (ii) all materials (in paper, electronic, or any other form) containing any, or derived from, such trade secrets or other confidential or proprietary information; and (iii) all copies of such materials; and

iv. To turn over to the Court any proceeds they have received from the misappropriation of VIA's trade secrets, to be held in constructive trust until the conclusion of this litigation;

D. A judgment and order requiring Defendants to pay VIA their damages, costs, expenses, and prejudgment and post-judgment interest for Defendants' infringement of the '187 patent, as provided under 35 U.S.C. § 284; and requiring Defendants to pay VIA general damages, restitution and/or disgorgement arising from Defendants' trade-secret misappropriation and unfair competition, along with prejudgment and post-judgment interest thereon, as well as exemplary damages;

E.  A judgment and order finding that this is an exceptional case within the meaning of 35 U.S.C. § 285 and/or that Defendants have engaged in willful and malicious misappropriation of VIA's trade secrets under California Civil Code § 3426.4, and awarding to VIA its reasonable attorneys' fees against Defendants;

F.  A judgment and order requiring Defendants to provide an accounting and to pay supplemental damages to VIA, including without limitation, pre-judgment and post-judgment interest;

G.  Costs of court; and

H.  Any and all other relief to which VIA may be entitled.

Respectfully submitted,

DATED: August 7, 2014                **RUSS, AUGUST & KABAT**

*/s/ Irene Y. Lee*
Marc A. Fenster, SBN 181067
Irene Y. Lee, SBN 213625
Stanley H. Thompson, SBN 198825
Jean Y. Rhee, SBN 234916
Jeffrey Z.Y. Liao, SBN 288994
12424 Wilshire Boulevard
Twelfth Floor
Los Angeles, California 90025
Telephone: (310) 826-7474
Facsimile: (310) 826-6991

*Attorneys for Plaintiffs*
*VIA Technologies, Inc., a California corporation, VIA Technologies, Inc., a Taiwan corporation, and VIA Labs, Inc., a Taiwan corporation*

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs VIA Technologies, Inc., a California corporation, VIA Technologies, Inc., a Taiwan corporation, and VIA Labs, Inc., request a trial by jury of any issues so triable by right.

Respectfully submitted,

DATED: August 7, 2014    **RUSS, AUGUST & KABAT**

　　　　　　　　　　　　　　　　　　*/s/ Irene Y. Lee*
Marc A. Fenster, SBN 181067
Irene Y. Lee, SBN 213625
Stanley H. Thompson, SBN 198825
Jean Y. Rhee, SBN 234916
Jeffrey Z.Y. Liao, SBN 288994
Twelfth Floor
12424 Wilshire Boulevard
Los Angeles, California 90025
Telephone: (310) 826-7474
Facsimile: (310) 826-6991

*Attorneys for Plaintiffs*
*VIA Technologies, Inc., a California corporation, VIA Technologies, Inc., a Taiwan corporation, and VIA LABS, INC., a Taiwan corporation*