**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| VIA TECHNOLOGIES, INC. (A CALIFORNIA CORPORATION), et al.,<br><br>Plaintiffs,<br><br>v.<br><br>ASUS COMPUTER INTERNATIONAL, et al.,<br><br>Defendants. | Case No.  14-cv-03586-BLF<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**<br><br>[Re: ECF 59] |

In this action, Plaintiffs bring suit alleging infringement of two patents related to USB controller chip technology, as well as trade secret misappropriation, against three ASUS entities: ASUS Computer International ("ACI"), a California Corporation with its principal place of business in this district, and ASUSTEK Computer, Inc. ("ASUS-TW") and ASMEDIA Technology, Inc. ("ASM"), two Taiwanese corporations. With regard to the patent claims, Defendants move to dismiss the willfulness and inducement claims under Federal Rule of Civil Procedure 12(b)(6). With regard to the trade secret misappropriate claim, Defendants move to dismiss on three grounds: (1) failure to state a claim under Rule 12(b)(6), (2) lack of supplemental jurisdiction under 28 U.S.C. § 1367, and (3) *forum non conveniens*.

Having considered the briefing and oral argument of the parties, as well as the governing law, the Court GRANTS Defendants' motion to dismiss with regard to the willfulness and inducement claims, with leave to amend, and GRANTS IN PART AND DENIES IN PART the motion to dismiss with regard to the trade secret claims, also with leave to amend.

**I.    BACKGROUND**

VIA manufactures motherboard chipsets. Relevant to this litigation is VIA's USB 3.0 controller chip technology, which "includes analog design schematics for the high speed input-

1    output (I/O) modules that are used in hub controller chips, host controller chips, device controller
2    chips, and bridge controller chips to implement the USB 3.0 high-speed serial transfer protocol."
3    FAC ¶ 20. The trade secret components of VIA's USB 3.0 technology have not been publicly
4    disclosed. *See* FAC ¶ 28.

5        In October 2007, a VIA employee named Chewei Lin left the company to become
6    President, CEO, and Director of ASM; soon after, dozens of other VIA employees joined him,
7    including Chi Chang, now ASM's head of research and development. *See* FAC ¶ 30. These
8    employees, upon their departure from VIA, all signed agreements to return company information
9    and documents and cease their use of any "inventions, creations or works and concepts so accrued
10   during the period of employment," including VIA's "integrated circuit layout." FAC ¶ 32. VIA
11   alleges that as a result of ASM's "mass raiding" of these employees, ASM had knowledge of
12   VIA's trade secret information related to VIA's USB 3.0 technology. *See* FAC ¶ 34.

13       VIA began to suspect that ASM had misappropriated its trade secrets in late 2011, when
14   VIA became aware of a "rapid increase in ASM's revenue derived from USB 3.0 related sales."
15   FAC ¶ 36. VIA then "began to look for ASM chips on the open market to study them" to
16   determine whether its suspicions were well-founded, FAC ¶ 37, and discovered that ASM's
17   "ASM1042 and ASM1051 chips have schematics that are substantially similar to the analog
18   designs in VIA's chips." FAC ¶ 38. On August 21, 2012, VIA filed a criminal complaint with the
19   Taipei District Prosecutor's Office in Taiwan, charging ASM with the theft of VIA's USB 3.0
20   technology. On November 8, 2013, the Prosecutor's Office announced that it would proceed with
21   a criminal prosecution of ASM and four of its employees, including Chang. Thereafter, on
22   December 17, 2013, VIA filed a civil suit against ASM and ASUS-TW in Taipei District Court,
23   requesting the court enjoin ASM from producing and selling products derived from VIA's trade
24   secrets. *See* FAC ¶¶ 40-44. ACI is not a party to the Taiwanese lawsuit.

25       VIA alleges that ASUS-TW is the largest customer of ASM's USB 3.0 chips, *see* FAC ¶
26   45, and further alleges that ACI, the California corporation, is an alter ego of ASUS-TW (and that
27   ASUS-TW, in turn, is the controlling shareholder of ASM), and that "the wrongful acts of ASM
28   described herein should be imputed to ASUS-TW and ACI as well." FAC ¶ 46. VIA alleges that

ACI had knowledge that the products it marketed in the United States infringed VIA's patents and/or were made using VIA's misappropriated trade secrets. *See id.*

VIA brings suit against all three ASUS-related entities, alleging infringement of U.S. Patent No. 7,313,187 ("the '187 Patent") and U.S. Patent No. 8,476,747 ("the '747 Patent"), including willful infringement of the '187 Patent and induced infringement of both patents, as well as trade secret misappropriation under California Civil Code §§ 3426 *et seq.*

## II.   LEGAL STANDARDS

### A.   Rule 12(b)(6)

A motion to dismiss under Rule 12(b)(6) concerns what facts a plaintiff must plead on the face of its complaint. Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Any complaint that does not meet this requirement can be dismissed pursuant to Rule 12(b)(6). A "short and plain statement" demands that a plaintiff plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), which requires that "the plaintiff plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519, F.3d 1025, 1031 (9th Cir. 2008). The Court, however, "need not accept as true allegations contradicted by judicially noticeable facts," nor "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Kane v. Chobani, Inc.*, 973 F. Supp. 2d 1120, 1127 (N.D. Cal. 2014) (citing *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam)).

### B.   28 U.S.C. § 1367

Under Section 1367, a district court has "supplemental jurisdiction over all other claims that are so related to the claims in the action within [its] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." In *United Mine Workers v. Gibbs*, the Supreme Court authorized federal courts to assert jurisdiction over state law

3

claims when the state and federal claims at issue "derive from a common nucleus of operative fact." *Gibbs*, 383 U.S. 715, 725 (1966). Section 1367(c) authorizes a court, however, to decline to exercise supplemental jurisdiction in four circumstances: (1) the claim raises a novel or complex issue of state law; (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction; or (4) in other exceptional circumstances. In general, district courts should "deal with cases involving pendent jurisdiction in the manner that best serves the principles of economy, convenience, fairness, and comity." *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 172-73 (1997). Once supplemental jurisdiction is challenged by a defendant, the plaintiff bears the burden of proving that the district court has jurisdiction. *See, e.g.*, *Kakkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

### C. *Forum Non Conveniens*

The doctrine of *forum non conveniens* permits a district court, in its discretion, to dismiss a case even though jurisdiction and venue are proper, provided that an adequate alternative forum exists in which to hear the case and which has jurisdiction over all parties, and when the balance of public and private interests favors dismissal. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981). In doing this analysis, the court must consider private factors including "the relative ease of access to sources of proof, availability of compulsory process for attendance of the unwilling, and the cost of obtaining attendance of the unwilling . . . and all other practical problems that make trial of the case easy, expeditious, and inexpensive." *Gulf Oil v. Gilbert*, 330 U.S. 501, 508 (1947). The court must balance these factors with the public interest, including that "[t]here is a local interest in having localized controversies decided at home, . . . rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself." *Id.* at 509; *see also Am. Dredging Co. v. Miller*, 510 U.S. 443, 448-49 (1994).

### III. DISCUSSION

The Court begins by considering Defendants' arguments regarding Plaintiffs' patent claims, and then discusses Defendants' various arguments in support of dismissing the trade secret claim.

4

### A. Plaintiffs' Willfulness and Induced Infringement Claims

A claim for willful infringement of a patent requires that the patentee "show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent." *In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007). Implicit in this is a requirement that the patentee show that the infringer knew of the issuance of the patent. *See id.* (stating that the threshold issue for willful infringement is that "the infringer has actual notice of another's patent rights"). Similarly, a claim for induced infringement of a patent requires that the alleged inducer had knowledge of the patent and knowingly induced the infringing acts, and that the inducer possessed the specific intent to encourage another to infringe the patent. *See, e.g.*, *R+L Carriers, Inc. v. DriverTech LLC*, 681 F.3d 1323, 1339 (Fed. Cir. 2012).

Defendants move to dismiss the willful and induced infringement claims on the ground that Plaintiffs have failed to sufficiently allege knowledge of the '187 Patent or '747 Patent. Plaintiffs, in opposition, argue that they have alleged that Defendants had knowledge of the '187 Patent at least as of August 7, 2014, the date the original complaint in this action was filed, and the '747 Patent at least as of March 10, 2015, the date the FAC was filed. *See* Opp. at 10. They further contend that Defendants' knowledge of the '187 Patent goes as far back as October 2007, when Chi Chang, the named inventor on the '187 Patent, left VIA to join ASUS. *See id.* at 11-12.

Plaintiffs are correct that, in this district, "knowledge of a patent based on the filing of a complaint is sufficient to meet the requirement for an induced infringement claim." *Skyworks Solutions, Inc. v. Kinetic Techs., Inc.*, 2015 WL 881670, at *8 (N.D. Cal. Mar. 2, 2015) (citing *Bascom Research LLC v. Facebook, Inc.*, 2013 WL 968210, at *4 (N.D. Cal. Mar. 12, 2013)); *see also Solannex Inc. v. MiaSole*, 2011 WL 4021558, at *3 (N.D. Cal. Sept. 9, 2011) (holding the same for willfulness claims). Thus, Plaintiffs have sufficiently pled Defendants' knowledge of the '187 Patent as of August 7, 2014, and the '747 Patent as of March 10, 2015.

Plaintiffs' contention that Defendants knew of the '187 Patent in October 2007, however, is factually unsupported. The general rule in this district is that knowledge of a patent *application* alone is insufficient to meet the knowledge requirement for either a willful or induced

infringement claim. *See, e.g.*, *Solannex* at *3. The '187 Patent issued on December 25, 2007; Plaintiffs allege that ASUS became aware of the patent in October 2007, the month Chang became head of ASM's research and development team. *See* FAC ¶¶ 48, 49. When Chang joined ASM, the '187 Patent was still only a patent application. "Filing an application is no guarantee any patent will issue and a very substantial percentage of applications never result in patents." *Radware, Ltd. v. A10 Networks, Inc.*, 2013 WL 5373305, at *3 (N.D. Cal. Sept. 24, 2013) ("Assuming [the named inventor on the application] knew of the 219 and 702 Patents and *told* A10's management about either of the issued patents appears to be based on mere speculation.").

Plaintiffs' reliance in opposition on *Tomita Technologies USA, LLC v. Nintendo Co.*, a case from the Southern District of New York, is unpersuasive. In *Tomita*, the named inventor provided a number of defendant's employees with a demonstration of the technology, in addition to informing those employees that he had applied for a patent on the technology. The court found that this evidence was sufficient to create a triable issue of material fact as to whether "Nintendo ignored an objectively high likelihood of infringement that was so obvious that it should have been known." *Tomita*, 2012 WL 2524770, at *10 (S.D.N.Y. June 26, 2012). Here, Plaintiffs plead no facts beyond Chang being the named inventor on the pending patent application; they have therefore not sufficiently alleged that Defendants had knowledge of the '187 Patent at any time prior to the date on which the original complaint was filed.

Plaintiffs have sufficiently alleged knowledge of the '187 Patent as of August 7, 2014 and the '747 Patent as of March 10, 2015, and can proceed on their willfulness and inducement claims as of those dates even if they do not amend the FAC. *See, e.g.*, *Bascom* at *4. Plaintiffs will be granted leave to amend the FAC, however, in order to state facts that show Defendants had actual knowledge of the '187 Patent on a date after the patent issued – alleging this knowledge based on a pending application alone is insufficient. Plaintiffs must also amend their inducement allegations as to the '747 Patent to allege actual knowledge of that patent for dates prior to the filing of the FAC. *See Skyworks* at *8.

**B.     Plaintiffs' Trade Secret Claim**

    **1.     Plaintiffs' Claim is Adequately Pled as to ACI and ASUS-TW, but Requires Amendment as to ASM**

Defendants argue that the Court should dismiss Plaintiffs' trade secret claim under Rule 12(b)(6) because ACI did not "acquire, disclose, or use" any of VIA's trade secrets, and because Plaintiffs have failed plead facts that would render ACI liable for conduct committed by ASUS-TW or ASM under an agency or alter ego theory. Defendants also argue that the California Uniform Trade Secret Act ("CUTSA") does not reach conduct that occurs outside the United States, precluding Plaintiffs from seeking redress under the statute for conduct that took place in Taiwan. *See* Mot. at 6-11. The Court finds Defendants' arguments unpersuasive as to ACI and ASUS-TW, but that Plaintiffs must amend the FAC in order to state a claim against ASM.

First and foremost, Plaintiffs have adequately pled that ACI has misappropriated trade secrets under the "use" prong of the CUTSA. Under the CUTSA, marketing goods that embody the trade secret constitutes use of the trade secret. *See, e.g.*, *PMC, Inc. v. Kadisha*, 78 Cal. App. 4th 1368, 1383 (2000) ("[M]arketing goods that embody the trade secret . . . constitute[s] use."); *cf. also Cognis Corp. v. Chemcentral Corp.*, 430 F. Supp. 2d 806, 813 (N.D. Ill. 2006) (interpreting a near-identical portion of the Illinois Uniform Trade Secret Act to find that "distribution of a product manufactured by another's use of a trade secret constitutes use of that trade secret."). Plaintiffs' FAC alleges in paragraph 46 that ACI, ASUS-TW's sales and marketing agent, sold products that were made through the use of VIA's trade secrets with the knowledge that those products were made using the trade secrets. Defendants rely on *Silvaco Data Systems v. Intel Corp.*, 184 Cal. App. 4th 210 (2010), for their position that a party does not "use" a trade secret when the party's conduct consists of "possessing, and taking advantage of, something that was made using the trade secret." *Id.* at 224. *Silvaco*, however, dealt with a CUTSA claim against an end user of the product, not a party actively marketing and selling the product for use by others. *See id.* at 223 ("Intel's only conduct in this matter, so far as the record show, was to execute (run) the software it acquired from CSI. . . . We do not believe this can be viewed as 'use' of Silvaco's source code under CUTSA."). Because ACI is not alleged to be a mere end user of VIA's USB

technology, *Silvaco* is inapposite to the facts in this case.

At oral argument, Plaintiffs acknowledged that, while their FAC may have been unclear as to this point, they are seeking relief in this suit only for actions that took place in the United States. *See* Hearing Tr., ECF 67 at 20:9-16 (Ms. Rhee: "I apologize our pleading was not clear on the fact, but we allege the acquisition [of the trade secrets] just as background facts, however what we are seeking is relief for the use." The Court: "And so ACI being liable, under your allegations, for the marketing and sales, the use, as you allege, of the trade secrets here in the U.S., and the other two companies liable for that use in the U.S. as well." Ms. Rhee: "That's correct your honor."). This statement is particularly important when considering Defendants' *forum non conveniens* argument, below, but also bears on Plaintiffs' CUTSA claims with regard to ASUS-TW and ASM. Because Plaintiffs' FAC includes, as misappropriating activity in the United States, only ACI's sales and marketing of products, the Court must determine whether Plaintiffs have alleged sufficient facts to render ASUS-TW or ASM liable for ACI's conduct under either an alter ego or agency theory.

Plaintiffs argue that ACI is ASUS-TW's alter ego. FAC ¶ 46; *see also* Hearing Tr., ECF 67 at 9:8. To plead alter ego liability, Plaintiffs must show that "there is such a unity of interest and ownership that the separate personalities [of the two entities] no longer exist and [] that failure to disregard [their separate identities] would result in fraud or injustice." *Doe v. Unocal*, 248 F.3d 915, 926 (9th Cir. 2001). In *Unocal*, the Ninth Circuit stated that "where a parent corporation uses its subsidiary 'as a marketing conduit' and attempts to shield itself from liability based on its subsidiaries activities, piercing the corporate veil is appropriate and the alter-ego test is satisfied." *Id.* "Under California law, inadequate capitalization of a subsidiary may alone be a basis for holding the parent company liable for the acts of the subsidiary." *Id.* at 927 (quoting *Slottow v. Am. Cas. Co. of Reading, Penn.*, 10 F.3d 1355, 1360 (9th Cir. 1993)).

Here, Plaintiffs have alleged such inadequate capitalization. The FAC states:

> ASUS-TW is and has always been the 100% shareholder of ACI, and has kept ACI grossly undercapitalized at all times relevant to this Complaint, consistently reporting a negative net worth and around US$500,000 or less in capital since at least 2007, while having annual sales ranging from around US$400 million to over US$2 billion during the same timeframe.

8

FAC ¶ 13.

Plaintiffs further allege that ASUS-TW and ACI share a number of common officers and directors, including that the companies' respective chairmen serve as directors of the other entity. *See id.* The alleged undercapitalization here is greater than what the Ninth Cirtcuit considered sufficient to state a claim for alter ego liability in *Slottow*. *See* 10 F.3d at 1360. Coupled with the pleading that ASUS-TW owns 100 percent of ACI, and that the two entities share substantial overlap in their directors and management, Plaintiffs have plausibly alleged alter ego. While Plaintiffs will later need to prove such alter ego allegations through evidence, their specific factual allegations are sufficient to state a claim for alter ego liability of ASUS-TW based on ACI's actions in the United States.

Plaintiffs also contend that ACI is ASM's agent. *See* Hearing Tr. at 10:1-13. To plead an agency relationship, a plaintiff must "show[] that the subsidiary functions as the parent corporation's representative in that it performs services that are 'sufficiently important to the foreign corporation that if it did not have a representative to perform them, the corporation's own officials would undertake substantially similar services.'" *Doe* at 928 (citing *Chan v. Society Expeditions, Inc.*, 39 F.3d 1398, 1405 (9th Cir. 1994)). This means that a subsidiary is "either established for, or is engaged in, activities that, but for the existence of the subsidiary, the parent would have to undertake itself." *Chan* at 1405 (citing *Gallagher v. Mazda Motor of Am., Inc.*, 781 F. Supp. 1079, 1083-84 (E.D. Pa. 1992)).

Plaintiffs have not pled sufficient facts establishing that ACI is ASM's agent. Plaintiffs in fact plead that ASM "does substantial business on an ongoing basis in the United States . . . both directly, as well as through distributors and its sister company, ACI." FAC ¶ 12. Pleading that ASM uses ACI as a distributor, just as it does other, *unrelated* companies, fails to show that ACI was engaged in activities that "but for its existence" ASM would otherwise have to undertake. As such, Plaintiffs have failed to plead agency such that ASM can be held liable for ACI's alleged trade secret misappropriation in the United States. Plaintiffs will be granted leave to amend in order to cure this deficiency.

### 2. The Court Has Supplemental Jurisdiction Over Plaintiffs' Trade Secret Claim

Defendants argue that the Court should decline to exercise supplemental jurisdiction over Plaintiffs' state law trade secret claims for several reasons: first, that the trade secret claim does not overlap with the federal patent claims because "[t]rade secret protection is mutually exclusive of patent protection," *see* Mot. at 16; second, that the trade secret claim will predominate over the patent claims; third, that the trade secret claim will cause jury confusion; and fourth, that comity and judicial convenience require to the Court to decline to exercise supplemental jurisdiction because the trade secret claims will require the Court to apply Taiwanese law, *see* Mot. at 20. Plaintiffs, in response, argue that there is substantial factual overlap between the trade secret and patent claims such that they derive from the same common nucleus of facts, that the claims will not predominate or cause jury confusion, and that Defendants' argument that Taiwanese law must apply is "unsubstantiated." *See* Opp. at 19.

The Court agrees with Plaintiffs. Where defendants have been alleged to have developed products that infringe patents through the use of misappropriated trade secrets, courts in this district have repeatedly exercised supplemental jurisdiction over the state law trade secret claims. *See, e.g.*, *Aqua-Lung Am., Inc. v. Am. Underwater Prods., Inc.*, 2007 WL 3169050, at *1 (N.D. Cal. Oct. 29, 2007) ("Aqua-Lung may be correct that resolution of the state law claims will not require the Court to 'determine substantive issues of patent law,' but that is not the test for supplemental jurisdiction. Aqua-Lung has failed to show that the state law claims are not 'part of the same case and controversy.'"). Plaintiffs have alleged in the FAC that Defendants used VIA's trade secrets in order to make USB 3.0 chips that infringe the '187 and '747 Patents. *See, e.g.*, FAC ¶¶ 41, 50. There is, therefore, a common nucleus of operative facts in Plaintiffs' FAC that makes supplemental jurisdiction over the trade secret claim appropriate in this action. Defendants' argument that "[t]rade secret protection is mutually exclusive of patent protection" is, of course, legally accurate, but it ignores that a plaintiff can allege that defendants both misappropriated trade secrets and infringed a valid patent through the same series of actions, which is precisely what Plaintiffs do here. *See* FAC ¶ 46.

Defendants' other arguments are similarly unavailing. Because the trade secret misappropriation allegations involve the same products at issue as the patent infringement allegations, the trade secret claims are not so expansive and distinct from the patent claims as to predominate over the patent claims. *See Taiwan Semiconductor Mfg. Co. v. Semiconductor Mfg.*, 2004 WL 5212448, at *7 (N.D. Cal. Apr. 21, 2004) (finding that the "wide-ranging" trade secret claims would overwhelm the "relatively unexceptional" patent claims, and thus declining supplemental jurisdiction). Similarly, since the same products are implicated by the trade secret and patent claims, it is unlikely that a jury will be confused because the jury can readily be instructed as to the differences between trade secret and patent law.

Finally, the Court addresses Defendants' argument regarding Taiwanese law applying to this dispute. Under Section 1367(c), for the Court to decline supplemental jurisdiction Defendants must show two things: first, that the case is exceptional or truly unusual, and second that considerations of judicial economy, comity, and fairness provide compelling reasons to decline supplemental jurisdiction. *See also Executive Software v. United States District Court*, 24 F.3d 1545, 1561 n.10 (9th Cir. 1994) *overruled on other grounds by California Dep't of Water Resources v. Powerex Corp.*, 533 F.3d 1087 (9th Cir. 2008). A mere allegation that the Court will need to apply Taiwanese law, without making a showing under the three-part test used in California's choice of law analysis, is not, standing alone, sufficient to meet either of Section 1367(c)'s requirements. *Cf. Executive Software* at 1558 ("Congress has sounded a note of caution that the bases for declining jurisdiction should be extended beyond the circumstances [specifically] identified in subsections (c)(1)-(3) only if the circumstances are quite unusual.").

The Court, therefore, exercises jurisdiction over Plaintiffs' state law trade secret claims.

### 3. Plaintiffs' Claim Should not be Dismissed on the Grounds of *Forum Non Conveniens*

*Forum non conveniens* is an "exceptional tool to be employed sparingly [by the district court]." *Cheng v. Boeing Co.*, 708 F.2d 1406, 1410 (9th Cir. 1983). Defendants bear a "heavy burden" to show that there is an adequate alternative forum in which to hear the case, and that the balance of interests, both private and public, favor dismissal. *See, e.g.*, *Mintel Learning Tech., Inc.*

11

*v. Beijing Kaidi Educ. & Tech. Development Co.*, 2007 WL 2403395, at *7-9 (N.D. Cal. Aug. 20, 2007). Defendants must show "facts which establish that trial in the chosen forum would 'establish such oppression or vexation of a defendant as to be out of proportion to plaintiff's convenience.'" *Id.* at *8 (citing *Am. Dredging*, 510 U.S. at 447-48).

Defendants must first demonstrate that Taiwan is an adequate alternative forum. This requires a showing that all Defendants are amenable to service of process in the forum and that the subject matter of the suit is cognizable there, so as to provide Plaintiffs with appropriate redress. *In re Air Crash Over Taiwan Straits on May 25, 2002*, 331 F. Supp. 2d 1176, 1181 (C.D. Cal. 2004). Plaintiffs contend that ACI has "neither consented to the jurisdiction of the Taiwanese courts nor shown that VIA can obtain appropriate redress there." Opp. at 24. Defendants argue that the Taiwanese Defendants are amenable to process in Taiwan, but contend that "ACI was not included in any of the ongoing Taiwan litigation and was named as a Defendant in this action only in an attempt to gain jurisdiction over ASUS-TW and ASMedia in U.S. federal court." Mot. at 21. Defendants continue that Taiwanese courts "are capable [of] service of process on foreign parties like ACI outside of their territories." *Id.*

On balance, Taiwan is likely an adequate alternative forum for this action. ACI is not a party to the lawsuit in Taiwan, but Taiwanese courts can serve process and exercise jurisdiction over foreign parties like ACI. *Cf. Taiwan Straits* at 1181-82. Though ACI here has not provided a declaration stating that it would consent to jurisdiction in Taiwan, as the defendant did in the *Taiwan Straits* case, the "Court clearly is not empowered to send the case to the [Taiwan] with *only* the defendants' agreement." *Nai-Chao v. Boeing Co.*, 555 F. Supp. 9, 15-16 (N.D. Cal. 1982) (emphasis in original). As this Circuit has stated in *Lueck v. Sundstrand Corp.*, "a foreign forum will be deemed adequate unless it offers no practical remedy for the plaintiff's complained of wrong." 236 F.3d 1137, 1144 (9th Cir. 2001). As Plaintiffs' own FAC makes clear, Taiwanese courts are capable of providing monetary damages and injunctive relief for trade secret misappropriation, and VIA has sought such redress in the Taiwanese courts against two of the Defendants in this action. *See* FAC ¶ 43.

Though Taiwan may be an adequate alternative forum, Defendants have failed to meet

their "heavy burden" to show that the public and private interests favor dismissal. *See, e.g.*, *Mintel* at \*10.

The public interest inquiry is the clearer of the two. The factors relevant to this inquiry include the local interest in the outcome of the lawsuit, the court's familiarity with governing law, congestion in the court, and the costs of resolving a dispute unrelated to the forum. *See, e.g.*, *Piper Aircraft*, 454 U.S. at 259-61. The Court retains a clear public interest in the adjudication of this case, which involves parties including a Plaintiff and Defendant resident in this district, and actions that are alleged to have taken place in this district. *See, e.g.*, *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1181 (9th Cir. 2006). The case is not, as Defendants repeatedly characterize it, "rooted in Taiwan." *See* Reply at 13. Additionally, a plaintiff's choice of forum is "entitled to greater deference when the plaintiff has chosen [its] home forum," as VIA has done here. *CYBERsitter, LLC v. People's Republic of China*, 2010 WL 4909958, at \*5 (C.D. Cal. Nov. 18, 2010). Defendants have also produced no evidence that trial would be quicker in Taiwan than in this district. *Cf.* Huang Decl., ECF 59-1 at ¶¶ 2-3. On balance, the public interests weigh in favor of maintaining this suit in this district.

The private interests relevant to the *forum non conveniens* inquiry include the residence of the parties, the convenience to the litigants, access to evidence and others sources of proof, whether witness can be compelled to testify and the cost of bringing those witnesses to trial, and the enforceability of the court's judgment. *See Gulf Oil*, 330 U.S. at 508. As Plaintiffs note, this suit centers on the acts of ACI that allegedly took place in this district, and many of the "relevant ACI documents and witnesses will be located in this [d]istrict." Opp. at 20. Though Defendants may bear costs to transport witnesses to this district, Plaintiffs would be subject to a reciprocal burden were the case to be dismissed and instead litigated in Taiwan. Further, Defendants have not named a single third-party witness in Taiwan who would fall outside the Court's subpoena power, and though some documents and testimony may need to be translated into English, courts in the United States deal with such issues regularly.

Defendants have therefore failed to meet their heavy burden to show that either the public or private interests in this litigation favor dismissal on the grounds of *forum non conveniens*.

13

## IV. ORDER

Defendants' motion to dismiss is GRANTED IN PART AND DENIED IN PART as follows:

1. The Court GRANTS the motion to dismiss Plaintiffs' willful and induced infringement claims as to knowledge of the patents prior to filing the Complaint (with respect to the '187 Patent) and FAC (with respect to the '747 Patent). The Court grants Plaintiffs leave to amend to allege Defendants' actual knowledge of the '187 Patent and '747 Patent prior to the filing of the Complaint and FAC, respectively.

2. The Court DENIES the motion to dismiss Plaintiffs' trade secret claim against ACI and ASUS-TW, and GRANTS the motion to dismiss Plaintiffs' trade secret claim against ASM, with leave to amend.

3. The Court DENIES the motion to dismiss Plaintiffs' trade secret claim for lack of supplemental jurisdiction.

4. The Court DENIES the motion to dismiss Plaintiffs' trade secret claim on the grounds of *forum non conveniens*.

5. Any second amended complaint must be filed no later than **July 10, 2015**.

**IT IS SO ORDERED.**

Dated: June 18, 2015

BETH LABSON FREEMAN
United States District Judge