UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIA TECHNOLOGIES, INC. (A CALIFORNIA CORPORATION), et al.,<br><br>Plaintiffs,<br><br>v.<br><br>ASUS COMPUTER INTERNATIONAL, et al.,<br><br>Defendants. | Case No. 14-cv-03586-BLF<br><br>**ORDER GRANTING-IN-PART MOTION TO COMPEL**<br><br>**(Re: Docket No. 117)** |

This case centers on the alleged theft of circuit designs for USB chips. Plaintiffs VIA Technologies, Inc.[1] and VIA Labs, Inc. claim that VIA's direct competitors, Defendants ASUS Computer International, ASUSTek Computer Inc. and ASMedia Technology, Inc., hired away a number of VIA employees starting in 2007.[2] According to VIA, these employees took with them VIA's trade secrets—proprietary designs for USB controllers—and helped Defendants expand rapidly into the USB 3.0 chip market and hijack VIA's sales.[3]

Now before the court is VIA's motion to compel responses to a number of discovery requests, through which VIA seeks further proof of these allegations.[4] The motion is GRANTED, but only IN-PART.

---

[1] Two named Plaintiffs in this action bear this name. One is a Taiwanese corporation, and the other is headquartered in California. *See* Docket No. 70 at ¶¶ 7-8.

[2] *See id.* at ¶¶ 7-13, 36-39.

[3] *See id.* at ¶¶ 40-53.

[4] *See* Docket No. 117.

1
Case No. 14-cv-03586-BLF
ORDER GRANTING-IN-PART MOTION TO COMPEL

**I.**

For over 20 years, VIA has manufactured chipsets for computer motherboards.[5] As alleged in VIA's complaint, the company was among the first to incorporate USB technology into its motherboards in the late 1990s, and VIA was an early adopter of the higher-bandwidth USB 2.0 standard in 2001.[6] Because the more recent USB 3.0 and 3.1 standards require backwards compatibility with older versions, VIA's USB 3.X products—as well as, VIA alleges, Defendants' competing products—depend on the previous generations of USB technology that VIA developed over the years.[7]

VIA traces this alleged theft back to a mass exodus that started in 2007. In October of that year, a VIA employee named Chewei Lin left the company to become an executive at ASMedia, breaching the terms of a non-competition agreement he signed on his way out the door.[8] Dozens of his colleagues at VIA followed, despite signing similar agreements of their own.[9] These employees "collectively had knowledge of substantially all of VIA's confidential trade secret information relating to USB [t]echnology."[10]

VIA first began to suspect trade secret misappropriation in 2011, when it learned that Defendants had taken a significant bite out of VIA's sales of USB 3.0 chips.[11] Over the next few months, VIA pursued its hunch—it hunted down and bought Defendants' chips on the open market and submitted them for reverse engineering.[12] This testing confirmed that several of these

---

[5] *See* Docket No. 70 at ¶¶ 24-26.

[6] *See id.* at ¶¶ 26-28.

[7] *See id.* at ¶¶ 30-31.

[8] *See id.* at ¶ 36-39.

[9] *See id.*

[10] *Id.* at ¶ 40.

[11] *See id.* at ¶ 42.

[12] *See id.* at ¶¶ 43-44.

chips had schematics "substantially similar to the analog designs in VIA's chips."[13] Around the same time, an internal investigation at VIA uncovered that many of the defectors to ASMedia had downloaded and printed proprietary USB circuit diagrams just before leaving.[14]

In August of 2012, VIA filed a criminal complaint in Taiwan.[15] When Taiwanese police raided ASMedia's offices, they found proprietary schematics with VIA markings as well as Defendants' schematics that bore strong similarities to VIA's designs.[16] Citing these discoveries, VIA then filed a civil suit in Taiwan in 2013.[17] And in late 2014, VIA sued in this district.[18] VIA's operative complaint alleges two counts of patent infringement as well as trade secret misappropriation under the California Uniform Trade Secrets Act.[19]

Discovery has proceeded in fits and starts. VIA served its first requests for production related to the trade secret claim on July 7, 2015.[20] In response, Defendants served only objections.[21] In particular, they contended that VIA had not satisfied Cal. Civ. Proc. Code § 2019.210, which requires a plaintiff alleging trade secret misappropriation to "identify the trade secret with reasonable particularity" "before commencing discovery related to the trade secret." Separately, Defendants moved to stay proceedings on the trade secret claim pending the resolution of the actions in Taiwan.[22]

---

[13] *Id.* at ¶ 44.

[14] *See id.* at ¶ 45.

[15] *See id.* at ¶ 46.

[16] *See id.* at ¶ 47.

[17] *See id.* at ¶ 49.

[18] *See* Docket No. 1.

[19] *See* Docket No. 70 at ¶¶ 54-90.

[20] *See* Docket No. 117-1, Exs. 2-4.

[21] *See id.*, Exs. 5-7.

[22] *See* Docket No. 82.

3
Case No. 14-cv-03586-BLF
ORDER GRANTING-IN-PART MOTION TO COMPEL

1  VIA amended its Section 2019.210 disclosure later in August 2015,[23] and Defendants dropped their objection to the sufficiency of that disclosure. In December, the presiding judge denied the motion to stay.[24] Defendants then started producing documents on a rolling basis.[25] Still, VIA argues that the production is insufficient in several respects. After failing to resolve these disagreements without court intervention, VIA moved to compel fuller responses.

**II.**

This court has jurisdiction under 28 U.S.C. §§ 1332 and 1367. The undersigned was assigned discovery matters in this case pursuant to Fed. R. Civ. P. 72(a).

**III.**

VIA first takes issue with the type of documents that Defendants have produced and the breadth of products that they cover. Because, VIA argues, its stolen trade secrets include several large functional areas of USB chipsets, Defendants must turn over their design schematics—specifically, analog transistor logic schematics—for those functional areas for every USB chip that Defendants manufacture. VIA points out that it already has reverse engineered Defendants' first USB 3.0 product, the ASM1042, and found at least 12 specific components that directly match VIA's proprietary designs. Defendants' later, derivative products therefore may well rely on the same allegedly stolen designs.

In opposition, Defendants argue that they need only produce those schematics that may contain the trade secrets that VIA has identified. Accordingly, they have produced, and continue to produce, schematics that correspond to the 12 components that VIA named in its trade secret disclosure and to the 3300 pages of documents that VIA produced in support of that disclosure. These include schematics for products other than the ASM1042. Defendants say that the only documents they have withheld are those that VIA already has in its possession.

---

[23] *See* Docket No. 120-5, Ex. 2.

[24] *See* Docket No. 108.

[25] *See* Docket No. 117-3, Ex. 17.

4
Case No. 14-cv-03586-BLF
ORDER GRANTING-IN-PART MOTION TO COMPEL

The parties' dispute boils down to this: what did VIA's trade secret disclosure actually disclose? The scope of the Section 2019.210 disclosure controls the scope of discovery.[26] In fact, one of the purposes of that rule is to "assist[] the court in framing the appropriate scope of discovery and in determining whether [a] plaintiff's discovery requests fall within that scope."[27] Having been called on to rule on this motion, and even if Defendants no longer object to the disclosure, the court therefore must evaluate its sufficiency.

The disclosure in question starts out with the VIA products at issue: "VIA chipset products [that] implement USB (Universal Serial Bus) 3.0 technology, including but not limited to PCIE . . . , SATA . . . , USB . . . 1.1 and 2.0, and SSC . . . technologies." The disclosure then identifies 12 analog schematics specifically, but it claims that "VIA's trade secret analog designs include, but are not limited to," those schematics.[28] The disclosure also says that "VIA's trade secret analog designs . . . include, but are not limited to," the aforementioned 3300 pages of documents.[29] According to the disclosure, "[t]he entirety of each of VIA's analog schematics is a trade secret."[30] "Moreover, individual subparts of particular schematics with particular functional relevance also constitute VIA's trade secrets."[31] The document includes several specific examples of such subparts and provides evidence that Defendants' products contain the same circuits.[32] Finally, it claims that "VIA's digital designs for [the above-named] chipsets" also are trade secrets.[33]

---

[26] *See Brescia v. Angelin*, 172 Cal. App. 4th 133, 144 (2009).

[27] *Advanced Modular Sputtering, Inc. v. Superior Court*, 132 Cal. App. 4th 826, 833 (2005) (quoting *Comput. Econ., Inc. v. Gartner Grp., Inc.*, 50 F. Supp. 2d 980, 985 (S.D. Cal. 1999)).

[28] Docket No. 120-5, Ex. 2 at 1-2.

[29] *Id.* at 1.

[30] *Id.* at 3.

[31] *Id.*

[32] *See id.* at 3-10.

[33] *Id.* at 10.

Against the statutory standard—again, the plaintiff must "identify the trade secret with reasonable particularity"[34]—VIA's disclosure is plainly insufficient. Every time VIA identifies a trade secret with any particularity, it hides that identification in layers of hedging. For instance, VIA's trade secrets "include, but are not limited to," the technologies that its products implement, the documents that it has produced and the 12 schematics that it has named.[35] The disclosure describes several circuits in detail, but these are just examples of "individual subparts" that "constitute VIA's trade secrets."[36] Indeed, the disclosure claims that *all* of VIA's analog and digital schematics are trade secrets in their entirety, in addition to some unidentified subparts within them.[37] Even the 3300 pages are simply whatever VIA's employees printed before they left for ASMedia.[38] They include "schematics, waveforms . . . and other documents," many of which are essentially useless without context.[39] In all, the disclosure gives Defendants—and the court— practically no guidance on precisely what VIA claims as its trade secrets.[40]

---

[34] Cal. Civ. Proc. Code § 2019.210.

[35] Docket No. 120-5, Ex. 2 at 1-2.

[36] *Id.* at 3-5.

[37] *See id.* at 3.

[38] *See id.* at 2-3.

[39] *Id.* at 1; *see* Docket No. 120-5, Ex. 3.

[40] *Cf. Myrio Corp. v. Minerva Network Inc.*, Case No. 00-cv-20996, 2001 U.S. Dist. LEXIS 10461, at *1-3 (N.D. Cal. Apr. 4, 2001) ("The Amended Identification of Trade Secrets shall be narrowed to include only items that Plaintiff considers are its actual trade secrets, and only those trade secrets that Plaintiff has reasonable grounds to allege were misappropriated . . . . If Plaintiff contends that a trade secret consists of a specific combination of items, it shall so state and concisely describe the combination. If Plaintiff contends that its specific use of an otherwise publicly known item constitutes its secret, it shall so state and concisely describe the use. All trade secrets shall be described in narrative form, rather than by cross-reference to other trade secrets or documents. If Plaintiff references a document as setting forth one or more trade secrets, it shall specify precisely which portions of the document describe the trade secret(s)."); *Sys. Am., Inc. v. Softline, Inc.*, Case No. 96-cv-20730, 1996 U.S. Dist. LEXIS 22415, at *1-3 (N.D. Cal. Oct. 30, 1996) (finding statement "insufficient" and "extremely broad" where it outlined "a number of categories of documents"); *Cal. Micro Devices Corp. v. Universal Semiconductor, Inc.*, Case No.

1    In light of these shortcomings, the court is tempted to rule out any discovery at all.
2    However, VIA is entitled to discovery on at least the trade secrets that it has specifically
3    identified: the 12 schematics.[41]  If they have not done so already, Defendants must provide analog
4    circuit designs of the portions of all of their accused products that correspond to those 12
5    schematics.  Defendants also must produce the schematics that VIA already has; VIA can decide
6    for itself whether it needs them.  But VIA's present disclosure merits no more discovery than this.

## IV.

VIA also asks the court to compel Defendants to produce the personnel files for some former VIA employees.  Specifically, VIA's 74th request for production seeks "[a]ll documents related to [ASMedia's] hiring of employees of VIA . . . from March 2006 to October 2009."[42]  As a compromise, VIA later offered to limit this request "to pre-hiring documents relating to individuals directly hired from VIA."[43]  Defendants object on the basis of the "inalienable right" of privacy granted by the California Constitution,[44] which limits discovery even in private

---

93-cv-20476, 1995 WL 705144, at *1 (N.D. Cal. Nov. 21, 1995) (noting that because plaintiff had provided a Section 2019.210 statement, defendant had to respond to deposition questions by plaintiff); *see also* Charles Tait Graves & Brian D. Range, *Identification of Trade Secret Claims in Litigation: Solutions for a Ubiquitous Dispute*, 5 Nw. J. Tech. & Intell. Prop. 68, 69 (2006) ("Precise identification of the alleged trade secrets is a crucial component of trade secret litigation. This is especially true when complex technology is at issue, but also in cases featuring simpler claims.  Without a precise identification of software code elements, hardware architecture components, or even the names of allegedly secret customers, the defendant cannot compare the claims against public domain information to challenge the alleged secrecy of such information.  It is difficult to conduct a public domain analysis if the claims are identified at only a generic level such as 'source code,' 'ASIC design elements,' or 'customer lists.'  Stated differently, the parties and the court cannot accurately decide the question of whether a trade secret exists without first understanding what precisely is asserted as a secret.").

[41] The request at issue is VIA's 77th, which seeks "[a]ll documents related to devices incorporating or derived from the trade secrets identified in Plaintiffs' Trade Secret Disclosure." Docket No. 117-1, Ex. 2 at 17; *id.*, Ex. 3 at 17; *id.*, Ex. 4 at 9.

[42] *Id.*, Ex. 2 at 17; *id.*, Ex. 3 at 17; *id.*, Ex. 4 at 9.

[43] Docket No. 117-3, Ex. 13 at 4-5.

[44] Cal. Const. art. I, § 1.

7
Case No. 14-cv-03586-BLF
ORDER GRANTING-IN-PART MOTION TO COMPEL

litigation in federal court.[45]  That right may be abridged only if "there is a 'compelling' and opposing state interest" in disclosure.[46]  Defendants urge that there is no such compelling interest here, at least not with respect to each of the dozens of employees whose records VIA seeks.[47]

VIA strenuously argues in its motion that Defendants waived this objection by not raising it in their initial responses.  Defendants point out that they did precisely that—those responses mentioned "rights of privacy under California law,"[48] and they brought up the same objection in phone conversations with VIA's counsel.[49]  At oral argument on the instant motion, VIA admitted that it was wrong.  Although the court appreciates VIA's candor, it must note that VIA offered no excuse for the mistake.  Such an error does no favors for VIA's credibility.

In any case, the discovery request at issue is overbroad on its face; VIA's willingness to narrow it might arise more from realism than generosity.  But the Federal Rules require that, when served, a request for production must be "proportional to the needs of the case," and the "burden or expense of the proposed discovery" should not "outweigh[] its likely benefit."[50]  By contrast, this all too common tug-of-war—an initially overbroad request, followed by the inevitable meet-and-confer to cut it down to size—only increases the costs of discovery.  Here, even the limited version includes employees about whom VIA has offered no evidence of wrongdoing.  Worse yet, the relevance of these pre-hiring documents is tenuous at best; VIA simply argues that documents reflecting salaries and bonuses offered to these employees might tend to show their bias.

---

[45] *See John B. v. Superior Court*, 38 Cal. 4th 1177, 1198-1200 (2006); *Rangel v. Am. Med. Response W.*, Case No. 09-cv-01467, 2010 WL 5477675, at *3-4 (E.D. Cal. Dec. 30, 2010).

[46] *Bd. of Trs. of Leland Stanford Junior Univ. v. Superior Court*, 119 Cal. App. 3d 516, 525 (1981) (quoting *City of Santa Barbara v. Adamson*, 27 Cal. 3d 123, 131 (1980)).

[47] Even VIA's reduced request covers individuals "including but not limited to" the 52 former employees named in its 68th request for production. Docket No. 117-3, Ex. 13 at 5; *see* Docket No. 117-1, Ex. 2 at 14-16; *id.*, Ex. 3 at 14-16; *id.*, Ex. 4 at 6-8.

[48] *E.g.*, Docket No. 117-1, Ex. 5 at 105.

[49] *See* Docket No. 121-1 at ¶ 6.

[50] Fed. R. Civ. P. 26(b)(1).

On the basis of overbreadth alone, the court again is tempted to deny the motion. But here too, VIA has offered a compelling interest in pre-hiring documents relating to at least some employees: the eight that printed documents before they left,[51] as well as Chewei Lin, the executive whose poaching precipitated the rush for the exits.[52] For the remainder, California's right to privacy, not to mention the scope restrictions of Rule 26, preclude any discovery.

## V.

VIA's motion to compel is GRANTED-IN-PART as indicated above. Defendants shall produce any discovery ordered here within 28 days.

**SO ORDERED.**

Dated: March 17, 2016

_____
PAUL S. GREWAL
United States Magistrate Judge

---

[51] *See* Docket No. 120-5, Ex. 2 at 2-3.

[52] *See* Docket No. 70 at ¶ 39.

9
Case No. 14-cv-03586-BLF
ORDER GRANTING-IN-PART MOTION TO COMPEL