# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| VIA TECHNOLOGIES, INC. (A CALIFORNIA CORPORATION), et al.,<br><br>Plaintiffs,<br><br>v.<br><br>ASUS COMPUTER INTERNATIONAL, et al.,<br><br>Defendants. | Case No. 14-cv-03586-BLF<br><br>**ORDER REGARDING MOTIONS *IN LIMINE*** |

Plaintiffs VIA Technologies, Inc., VIA Technologies, Inc., and VIA Labs, Inc., (collectively, "VIA" or "Plaintiffs") bring this lawsuit against Defendants ASMedia Technology Inc., ASUSTeK Computer Inc., and ASUS Computer International (collectively, "ASUS" or "Defendants"), currently alleging trade secret misappropriation in violation of Cal. Civ. Code §§ 3426 et seq. ("CUTSA") and 18 U.S.C. §§ 1836 et seq. ("DTSA"). This Order addresses the parties' motions *in limine*. For the reasons explained below and on the record at the July 13, 2017 pretrial conference, the motions are decided as follows:

Plaintiffs' Motion *in Limine* No. 1: GRANTED IN PART and DENIED IN PART.

Plaintiffs' Motion *in Limine* No. 2: GRANTED.

Plaintiffs' Motion *in Limine* No. 3: GRANTED IN PART and DENIED IN PART.

Plaintiffs' Motion *in Limine* No. 4: DENIED.

Defendants' Motion *in Limine* No. 1: DENIED.

Defendants' Motion *in Limine* No. 2: GRANTED IN PART and DENIED IN PART.

Defendants' Motion *in Limine* No. 3: DENIED.

## I. PLAINTIFFS' MOTIONS IN LIMINE

### A. Plaintiffs' Motion *in Limine* No. 1 to Exclude Evidence and Argument Relating to Intellectual Property of ASUS and Theories of Liability that are No Longer at Issue

Plaintiffs move to exclude evidence or argument relating to: (1) intellectual property (such as patents and trade secrets) belonging to Defendants, and/or (2) dropped or dismissed theories of liability, such as claims that Defendants misappropriated designs for PCIE and infringed United States Patent No. 8,476,747 ("the '747 patent"). ECF 266. Plaintiffs argue that this evidence is irrelevant and would confuse the jury, result in undue delay, and waste time. *Id*.

Defendants respond that they do not intend to use evidence of their own intellectual property as a defense to patent infringement or trade secret misappropriation. ECF 286. However, Defendants argue that they should be permitted to introduce evidence of their own intellectual property to show lack of malicious theft of trade secrets. *Id*. Defendants argue this evidence is relevant because it suggests a corporate culture of creativity and respect for others' creativity. *Id*. at 2-3.

The Court agrees with Defendants that general evidence of their corporate culture, including that they own intellectual property, is relevant rebuttal evidence to malicious theft of trade secrets. Accordingly, the Court DENIES Plaintiffs' motion with respect to evidence relating to the intellectual property of ASUS.

The Court, however, agrees with Plaintiffs that evidence relating to dropped or dismissed theories of liability, in general, should be excluded. However, it may be the case that, even if such evidence is not allowed to be introduced in the first instance, it may be proper rebuttal. Accordingly, the Court GRANTS Plaintiffs' motion with respect to evidence relating to dropped or dismissed theories of liability. Defendants may, however, move for modification of this order if such evidence become relevant to a defense.

### B. Plaintiffs' Motion *in Limine* No. 2 to Preclude Defendants from Misrepresenting at Trial that VIA's Trade Secret Claims Only Concern 29 Analog Schematics

Plaintiffs move to preclude Defendants from representing at trial that Plaintiffs' trade secret claims as to analog circuit schematics are limited to only 29 schematics. ECF 267. On October 12, 2016, Magistrate Judge Lloyd issued an order "limit[ing] the scope of [Plaintiffs']

requested [trade secret] discovery to 24 analog schematics of its choice, in addition to those schematics included in the power efficiency combination trade secret," as well as the "list of 39 digital designs" (i.e., Verilog source code) identified in its May 27, 2016 Second Amended Trade Secret Disclosures. ECF 182.

Plaintiffs argue that, even though discovery proceeded on this limited basis, they should not be precluded from arguing the full scope of their analog circuit schematics trade secret claims at trial, which, according to Plaintiffs, consist of 1,116 schematics relating to certain subcomponents of technologies in USB 3.0. ECF 267 at 2. Plaintiffs argue this is the case because Magistrate Judge Lloyd's order only concerned discovery, not dispositive issues, and in fact Magistrate Judge Lloyd lacked jurisdiction under 28 U.S.C. § 636(b)(1)(A) to render a dispositive order that would foreclose Plaintiffs from proceeding on any trade secret claims. *Id*. at 2-3. Plaintiffs also argue that trade secret misappropriation and misuse can be proven circumstantially, and they should be allowed to use the 29 schematics to prove by way of example that Defendants misappropriated the full 1,116 schematics. *Id*. at 4-5.

Defendants respond that the purpose of Magistrate Judge Lloyd's order was to limit the scope of the trade secret case, and the Court should continue to enforce its boundaries at trial. ECF 287. Defendants argue that Plaintiffs' jurisdictional arguments are waived because they did not, pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(a), object to Magistrate Judge Lloyd's order within 14 days. *Id*. at 2. Defendants also argue that Plaintiffs' jurisdictional arguments are incorrect because courts have an inherent power to control their dockets. *Id*. at 3. Defendants additionally disagree that Plaintiffs can prove trade secret misappropriation by example, arguing that Plaintiffs must specifically identify the precise aspects of the analog circuit schematics (which are a hybrid of trade secrets and publicly known information) that are trade secrets and prove how each derives independent economic value from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use. *Id*. at 4-6.

The Court agrees with Plaintiffs that Magistrate Judge Lloyd's October 12, 2016 order does not limit their trade secret claims to 29 schematics. Magistrate Judge Lloyd's order is a

discovery order. Its analysis is conducted according to Federal Rule of Civil Procedure 26(b), which covers "Discovery Scope and Limits." *See* ECF 182 at 3-7. At no point does it indicate that it limits the reach of Plaintiffs' claims. *See id.* Indeed, the closest it comes is an observation that "[i]t is impossible for VIA to effectively prosecute and for ASMedia to effectively defend a claim regarding so many trade secrets in a two-week trial." *Id*. at 5. However, this statement was made in the context of assessing whether interests would be served by allowing broader discovery—it stands simply to observe that the amount of discovery that Plaintiffs sought was greater than what would be manageable at trial. This does not mean that Plaintiffs would be required to be so limited, though.

Moreover, regardless of its wording, Magistrate Judge Lloyd's order must be a discovery order, as he did not have authority to issue an order limiting Plaintiffs' claims. Where, as here, the parties did not consent to proceeding before a magistrate judge, a magistrate judge may only handle pretrial motions that are referred by a district court judge. *Flam v. Flam*, 788 F.3d 1043,1045-46 (9th Cir. 2015); 28 U.S.C. § 636; Fed. R. Civ. P. 72. Absent party consent, 28 U.S.C. § 636(b)(1)(A) only empowers magistrates to decide non-dispositive motions. *Flam*, 788 F.3d at 1046. Interpreting Magistrate Judge Lloyd's order as limiting the number of Plaintiffs' trade secret claims would convert it into a dispositive order, which is not allowed under § 636.

Finally, interpreting the order as a discovery order most closely aligns with Defendants' original objectives in seeking this relief. In the briefing leading up to Magistrate Judge Lloyd's order, Defendants' primary rationale for seeking a limitation on the number of schematics they needed to produce to Plaintiffs was reducing their discovery burden. *See* ECF 177 at 6-10. Defendants never sought relief from this Court to limit the number of dispositive issues, even though they could have. Indeed, issue narrowing is a common practice in patent cases, which, until very recently, this case was one. Defendants cannot now escape these strategic choices at this late stage. Accordingly, the Court finds that Plaintiffs' trade secret claims are not limited to 29 schematics. Plaintiffs' motion is GRANTED.

4

### C. Plaintiffs' Motion *in Limine* No. 3 to Exclude the Opinions of Defendants' Damages Expert that are Based on Product Sales

Plaintiffs move to exclude the trade secret damages opinions of Defendants' expert, Mr. James Pampinella, that are based on product sales, as disclosed in paragraphs 41, 47, 48, 55, and 56 of his January 27, 2017 report. ECF 258. Plaintiffs argue that because they only seek trade secret damages based on a theory of unjust enrichment and because the only unjust enrichment they allege is avoided R&D costs, product sales are irrelevant and should not be part of the damages calculation. *Id*. at 3-4. Plaintiffs specifically take issue with two sales-related aspects of Mr. Pampinella's opinion: (1) his comparison of Defendants' U.S. sales with the amount of R&D expenses that Plaintiffs' expert, Ms. Melissa Bennis, determined Defendants avoided through their misappropriation of Plaintiffs' trade secrets (discussed in paragraph 41); and (2) his opinion that Ms. Bennis should have apportioned her damages figure to "reflect U.S. sales," because the R&D benefit that Defendants allegedly received through misappropriation is the same regardless of how many products they subsequently sold in the U.S. (discussed in paragraphs 47, 48, 55, and 55). *Id*. at 4-5.

Defendants respond that product sales is an alternative approach to estimating avoided R&D costs, which has been recognized and supported by industry publications. ECF 269 at 3-4. Defendants also complain that Plaintiffs have taken a shifting sands approach to damages: according to Defendants, Plaintiffs represented at the May 14, 2015 motion to dismiss hearing that they were only seeking relief for "use" of their alleged trade secrets in the United States, but, in their expert report, they seek damages based on the value of R&D expenses avoided by ASMedia in Taiwan. *Id*. at 2-3.

Rule 702 requires that "expert testimony be both relevant and reliable." *Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 860 (9th Cir. 2014) (internal citation and alteration omitted). "This requires district courts, acting in a 'gatekeeping role,' to assess 'whether the reasoning or methodology underlying the testimony' is valid and 'whether that reasoning or methodology properly can be applied to the facts in issue.'" *Id*. (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93, 597 (1993)). In other words, "[i]t is not 'the correctness of the expert's conclusions' that matters, but 'the soundness of his methodology.'" *Id*. (quoting

5

*Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 463 (9th Cir. 2014)).

The Court finds that Mr. Pampinella's comparison of Defendants' alleged avoided R&D expenses to U.S. sales should not be excluded. Although it is not always the case that sales prices exceed R&D costs (and vice versa), Mr. Pampinella's comparison of the two is relevant rebuttal to Ms. Bennis's opinion, as it provides the jury with another data point to use in weighing her credibility. Accordingly, Plaintiffs' motion with respect to paragraph 41 of his report is DENIED.

On the other hand, the Court finds that Mr. Pampinella's opinion that Ms. Bennis should have apportioned her damages figure to "reflect U.S. sales" should be excluded. "Where the plaintiff's loss does not correlate directly with the misappropriator's benefit . . . [a] defendant's unjust enrichment might be calculated based upon cost savings or increased productivity resulting from use of the secret." *Ajaxo Inc. v. E*Trade Fin. Corp.*, 187 Cal. App. 4th 1295, 1305 (2010). However, "[t]here is no standard formula to measure it." *Id*. Accordingly, Ms. Bennis was not legally required to apportion her damages figure to reflect U.S.-only sales. Mr. Pampinella's opinion to the contrary is neither relevant nor reliable, and, if anything, could confuse the jury's deliberations on damages. As such, exclusion is warranted. Plaintiffs' motion with respect to Mr. Pampinella's apportionment opinion in paragraphs 47, 48, 55, and 56 is GRANTED.

### D. Plaintiffs' Motion *in Limine* No. 4 to Exclude Newly Identified Evidence and Arguments Based Thereon

Plaintiffs move to preclude Defendants from relying on any evidence that was not disclosed in interrogatory responses that were not served prior to the depositions of relevant 30(b)(6) witnesses and other fact witnesses. ECF 269. This motion revolves around a series of events relating to certain discovery responses, which the parties do not appear to dispute: On April 26, 2016, Plaintiffs served the following interrogatories on Defendants:

> INTERROGATORY NO. 21: "Set forth in detail the complete basis for the contention in your Answer that . . . 'Plaintiffs' alleged proprietary information . . . is readily available in the public document [sic] and ascertainable by proper means including descriptions in trade journals, reference books, or other published materials/literature,' including identifying with specificity all facts and documents that support this contention and all persons with knowledge of such facts and documents."
>
> INTERROGATORY NO. 22: "Set forth in detail the complete basis for the contention . . . that 'Defendants independently developed or acquired the

6

information Plaintiffs' [sic] are claiming as their trade secrets,' including identifying with specificity all facts and documents that support this contention and all persons with knowledge of such facts and documents."

Ex. 5 to Mot. at 6-7, ECF 270-5. Defendants responded on June 2, 2016, citing five documents in their response to Interrogatory No. 21 and citing the same five documents and one spreadsheet in their response to Interrogatory No. 22. Ex. 7 to Mot. at 20-22; ECF 270-7. In October 2016, Plaintiffs served 30(b)(6) deposition notices on the following topics:

> AMENDED FIRST NOTICE – TOPIC 11: "The conception, design, research, development, test, and manufacture of each of ASM's USB 3.0 Chips, including without limitation, each of the Infringing Chips and Trade Secret Chips . . . ."
>
> AMENDED SECOND NOTICE – TOPIC 1: "The public documents, including trade journals, reference books, or other published materials/literature, from which you are asserting that Persons can readily and properly ascertain VIA's trade secrets . . . ."

Ex. 1 to Mot. at 12-13, ECF 270-1; Ex. 2 to Mot. at 9, ECF 270-2. Plaintiffs took the deposition of Defendants' designee on these topics on November 11, 2016. Ex. 10 to Mot., ECF 270-10.

Meanwhile, on October 12, 2016, Magistrate Judge Lloyd issued an order directing Plaintiffs to select any "24 analog schematics of [their] choice" plus any of the schematics included in the power efficiency combination trade secret on which they could pursue further discovery. ECF 182. Ten days later, on October 22, 2016, Plaintiffs disclosed their selection. Ex. 1 to Opp., ECF 290-2. Sixteen days later, on November 7, 2016, Defendants produced analog schematics corresponding to Plaintiffs' election. Ex. 2 to Opp., ECF 290-3.

On November 18, 2016, the last day of fact discovery, Defendants produced the development documents corresponding to Plaintiffs' selected schematics. They also identified additional documents evidencing public knowledge and supplemented their responses to Interrogatories Nos. 21 and 22 to identify additional supporting documents. Ex. 11 to Mot., 265-19. One month later, on December 19, 2016, Plaintiffs served their opening expert report on trade secret misappropriation. ECF 263-2. Defendants served their rebuttal report on January 27, 2017. ECF 263-13.

Plaintiffs contend that, because Defendants waited until the last day of fact discovery and the completion of relevant 30(b)(6) depositions to supplement their interrogatory responses and produce corresponding documents, they hid the full scope of their defenses and hindered

Plaintiffs' ability to seek relevant 30(b)(6) deposition testimony (and potentially other fact discovery) on these topics. ECF 269. Plaintiffs argue that courts have excluded evidence based on similar tactics, and urges the Court should do so here. *Id*. at 4-5. Plaintiffs also argue that the fact that they could depose Defendants' technical expert on these allegedly late-identified documents does not cure this problem, because Defendants' expert did not have personal knowledge of these documents and Plaintiffs were still deprived of the opportunity to get relevant discovery into the factual bases for Defendants' updated interrogatory responses. *Id*. at 5.

Defendants argue that their production of documents and supplementation of their interrogatory responses was reasonable under the circumstances, as Defendants did not know which analog circuit schematics Plaintiffs would select until they received Plaintiffs' selection on October 22, 2016. ECF 290 at 4. After that, Defendants point out, they took less than one month to produce the schematics and corresponding design documents. *Id*. Defendants also contend that their supplemental responses were substantially harmless to Plaintiffs, as an entire month passed between Defendants' supplementation and the issuance of Plaintiffs' expert report. *Id*. at 4-5.

The Court agrees with Defendants that this evidence should not be precluded. Although Defendants supplemented their interrogatory responses and produced additional documents on the last day of fact discovery, fact discovery was open nonetheless. At that point, Plaintiffs still had a full month before their opening expert reports were due. If Plaintiffs believed that Defendants' document production warranted additional 30(b)(6) deposition testimony, Plaintiffs could have sought leave to extend the fact discovery deadline to allow for these additional depositions. Plaintiffs did not do this. As such, Plaintiffs complain of a problem that seems to be at least in part of their own making. Plaintiffs' motion to preclude Defendants from relying on documents and discovery responses served after relevant 30(b)(6) depositions is DENIED.

Nevertheless, the Court recognizes that the timing of Defendants' supplementation and production may have hindered Plaintiffs' ability to get relevant information from certain 30(b)(6) witnesses. For that reason, the Court ORDERS that Defendant make one 30(b)(6) witness available for deposition in the U.S. who is prepared to testify on deposition topics no. 1 and 11. The deposition shall last no more than one day and must be concluded by July 31, 2017.

## II. DEFENDANTS' MOTIONS IN LIMINE

### A. Defendants' Motion *in Limine* No. 1 and *Daubert* Motion to Preclude the Use of Any Testimony From or Reference to the Opinions of Defendants' "Unjust Enrichment" Arising from its Alleged Use of VIA's Trade Secrets

Defendants seek to exclude the opinions and testimony of Plaintiffs' damages expert, Ms. Melissa Bennis, regarding Defendants' alleged unjust enrichment arising from its misappropriation of Plaintiffs' trade secrets. ECF 259-8. Defendants' challenge is twofold: First, Defendants argue that Ms. Bennis' opinion contradicts Plaintiffs' express representation to this Court at the May 14, 2015 motion to dismiss hearing that they would only seek recover for "use" of its alleged trade secrets in the United States. *Id*. at 3-4. In contrast, say Defendants, Ms. Bennis's opinion asks for damages based on a percentage of Plaintiffs' global research and development expenses, which Defendants contend is a new theory that was disclosed for the first time through her expert report. *Id*. at 4-5.

Second, Defendants challenge Ms. Bennis' opinion as unreliable because she does not attempt to measure the actual benefit received by Defendants from their alleged trade secret misappropriation. *Id*. at 5-8. At a high level, Ms. Bennis calculates Defendants' alleged savings in R&D fees by totaling Plaintiffs' mask design fees for the 139 projects they allege contributed to the development of the accused trade secrets, multiplying this by the ratio of total R&D expenses to total mask fees (to estimate total expenses for the 139 projects), and using surface area ratios to apportion for the features that relate to trade secrets. Ex. B to Mot. at 38-41, ECF 259-4. She assigns surface area ratios to each of the 139 projects by dividing them into five groups, selecting 1-2 representative mask designs for each of those five groups, and then calculating the percentage of that surface area corresponds to trade secret-related features. *Id*. at 39-41. Defendants claim her methodology is unreliable for several reasons: (1) she uses mask design fees, even though mask designs are not part of Plaintiffs' allegations; (2) she blindly assumes, based on conversations with Plaintiffs' engineers and expert, that there is a general correlation between surface area and design effort; (3) she blindly relies on Plaintiffs' engineers to group each of the 139 mask designs into a specific category, select representative mask design(s) for each category, and determine the percentage surface area for each representative design; (4) the representative

designs are not statistically significant; and (5) using surface area as a proxy for design effort is a methodology that has not been used in any other case or scientific or industry publication. ECF 259-8 at 5-8.

Plaintiffs disagree on both fronts. With respect to Defendants' first challenge, Plaintiffs argue that they only represented that their theory of liability—not damages—was premised on Defendants' alleged use of their trade secrets in the United States. ECF 292 at 1-2. Plaintiffs also argue that their unjust enrichment theory of damages is well supported under California and 9th Circuit law, and that they timely put Defendants on notice of this theory through their responses to Interrogatory No. 11 and production of their own R&D documents. *Id*. at 3-4. Plaintiffs also argue that there is no risk of double recovery from the Taiwan proceedings because they are only seeking lost profits (not unjust enrichment) in Taiwan; thus, Plaintiffs' unjust enrichment theory also should not be precluded on that basis. *Id*. at 4-5.

With respect to Defendants' second challenge, Plaintiffs argue that Ms. Bennis's methodology is reliable because courts have upheld damages models for avoided R&D costs that relied on a plaintiff's records where there is indicia of their reliability. Mot. at 6-7. Plaintiffs contend this is the case here because Ms. Bennis's opinion is based on contemporaneous documents that were created in the normal course of business and Ms. Bennis appropriately spoke with Plaintiffs' employees and technical expert to evaluate their reliability. *Id*. Plaintiffs also argue that Ms. Bennis's surface area apportionment analysis is reliable because issues such as the correlation between surface area and design effort and the representativeness of certain mask designs are technical questions for which Ms. Bennis appropriately relied on Plaintiffs' engineers. *Id*. at 8-9. Plaintiffs also point out that apportionment based on surface area has also been upheld by other courts. *Id*. at 8. Plaintiffs also maintain that Ms. Bennis's reliance on mask fees was reasonable because they were well documented on a per-project basis (whereas other types of R&D expenses are not) and Plaintiffs must incur mask design fees throughout the process of developing functional trade secrets. *Id*. at 10.

The Court finds that neither of the grounds advanced by Defendants warrants exclusion of Ms. Bennis's testimony. First, the Court is not convinced that Plaintiffs waived their right to

present their current damages theory at the May 14, 2015 motion to dismiss hearing. Plaintiffs' representations to the Court pertained to the scope of liability (i.e., that their theory of liability was based on Defendants' improper use of trade secrets in the U.S.), not damages. *See* ECF 69 ("At oral argument, Plaintiffs acknowledged that, while their FAC may have been unclear as to this point, they are seeking relief in this suit only for actions that took place in the United States."). Moreover, the Court is not persuaded that an entire damages theory could be waived by simple representations at a hearing on a motion to dismiss. Accordingly, Defendants' first challenge fails.

Second, the Court disagrees that Ms. Bennis's opinions are unreliable. Rule 702 "requires district courts, acting in a 'gatekeeping role,' to assess 'whether the reasoning or methodology underlying the testimony' is valid and 'whether that reasoning or methodology properly can be applied to the facts in issue.'" *Ollier*, 768 F.3d at 860 (quoting *Daubert*, 509 U.S. at 592-93, 597). "*Daubert* and Rule 702 are safeguards against unreliable or irrelevant opinions, not guarantees of correctness." *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 854 (Fed.Cir.2010) *aff'd*, 131 S.Ct. 2238 (2011). So long as an expert's methodology is sound and his opinions satisfy the requirements of Rule 702, underlying factual disputes and how much weight to accord the expert's opinion are questions for the jury. *Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1392 (Fed. Cir. 2003); *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010).

The Court finds that each of the reliability challenges raised by Defendants is more properly material for cross examination, rather than grounds for exclusion. First, with respect to Ms. Bennis's use of mask fees, Ms. Bennis relied on contemporaneous VIA documents that were created in the normal course of business. She also discloses in her report that she used mask fees in part because "VIA has well documented project specific mask fees," which she could correlate to the 139 projects which Plaintiffs identified as contributing to the development of their trade secrets. Ex. 2 to Mot. at 38, ECF 259-4. Further, she adjusted her calculation of total mask fees to total R&D fees using a ratio obtained from contemporaneous VIA documents that were created in the normal course of business. *Id*. at 39. Although it is true that the accused trade secrets do not relate to mask design, the Court finds Ms. Bennis's methodology sufficiently reliable and cannot exclude her opinion on this basis.

Second, with respect to Ms. Bennis's use of surface area ratios—including her assumption that there is a general correlation between surface area and design effort, her grouping each of the 139 mask designs into a specific category, her selection of representative designs, and her calculation of percentage surface area—, this implicates technical information and assumptions which Ms. Bennis received from Plaintiffs' engineers and technical expert. As a *damages* expert, Ms. Bennis was entitled to rely on this information. In her report, Ms. Bennis disclosed the names of the specific people from whom she received this information, as well as explained the general methodology that followed to arrive at the calculated surface area ratios. *Id*. at 39-40. It may be that some of this information is incorrect or that the extent to which Ms. Bennis relied on these technical assessments renders her less credible, but these are topics for cross examination.

The only somewhat non-technical aspect of Ms. Bennis's surface area ratios methodology that Plaintiffs challenge is the statistical significance of the representative designs. In her calculations, Ms. Bennis relied on only one representative design for three of the mask design categories, two representative designs with arguably high variance for one of the categories, and no representative design for the final category. Ex. 2 to Mot. at 40-41, ECF 259-4. However, this, in and of itself, is not enough to render her opinion unreliable—Ms. Bennis was still bounded by a technical assessment of which designs were representative, and it is possible that even a sample size of one could be sufficient for her purposes. As such, the Court finds that this is an issue for cross examination, and will not exclude Ms. Bennis's opinions on that basis.

In sum, Ms. Bennis's opinions pass muster under *Daubert* and Rule 702. Defendants' challenges pertain more to underlying factual assumptions and Ms. Bennis's credibility as a witness, which are determinations for the jury. Defendants' motion to exclude the opinions and testimony of Ms. Bennis is DENIED.

**B. Defendants' Motion *in Limine* No. 2 to Preclude Plaintiffs from Presenting Any Evidence of or Making Any Reference to the Taiwanese Criminal Proceedings and/or Prosecutor Searches**

Defendants move to preclude Plaintiffs from presenting evidence, testimony, arguments, or making any reference to the related criminal proceeding pending in Taiwan. ECF 261. Defendants argue that this evidence is irrelevant, highly prejudicial, and would result in juror

confusion and a waste of time. *Id*. at 3-5. Defendants also offer that they are willing to stipulate that certain of Plaintiffs' documents were found in ASMedia's office, so long as there is no reference to the underlying criminal investigation that resulted in this discovery. *Id*. at 4.

Plaintiffs respond that this evidence is highly relevant because it helps rebut Defendants' statute of limitations defense. ECF 293. Plaintiffs point out that, in arguing that this action should be barred under the statute of limitations, Defendants have made references to Plaintiffs' original Complaint in this action and their Criminal Complaint in Taiwan and argued that, in these documents, Plaintiffs made certain "admissions" about their state of mind that show that they were aware of Defendants' misappropriation in 2009 and 2010. *Id*. at 2-3. Plaintiffs argue that evidence about the Taiwanese prosecutor searches and criminal proceedings are necessary to put these "admissions" in context, because it shows that these "admissions" are actually hindsight statements, which were made only after the Taiwanese prosecutor searches had uncovered materials suggesting potential misappropriation. *Id*. at 3-4.

In addition to the statute of limitations, Plaintiffs also argue that the Taiwanese prosecutor searches and criminal proceedings evidence is relevant to its misappropriation claims because they are highly probative of Defendants' access and knowing improper use of Plaintiffs' trade secrets. *Id*. at 4-5. Plaintiffs argue that Defendants' proposed stipulation is inadequate because it eliminates telling details and deprives Plaintiffs of the fair and legitimate weight of this evidence.

The Court agrees with Defendants that references to criminal proceedings in Taiwan are highly prejudicial and likely to result in juror confusion. However, the Court also agrees with Plaintiffs that evidence relating to these proceedings is relevant to and probative of the statute of limitations issue. Thus, the Court GRANTS IN PART and DENIES IN PART Defendants' motion: the Court will allow Plaintiffs to present evidence relating to the criminal proceedings in Taiwan, so long as it is properly sanitized. Specifically, at least the words "prosecutor," "criminal," "raid," and "search" cannot be used. The proceedings must also be referred to in a neutral manner, such as "Taiwan government investigation," "agency action," or "proceedings in Taiwan." Before the commencement of trial, the parties shall meet and confer to identify any additional sanitization measures that may be necessary. During trial, Defendants may object to

any evidence that is not properly sanitized.

      **C.    Defendants' Motion *in Limine* No. 3 to Preclude Plaintiffs from Presenting Any Evidence of Any Alleged Trade Secret or Misappropriation Thereof Beyond the Specific Trade Secrets Permitted Under Magistrate Judge Lloyd's October 12, 2016 Order (Dkt. No. 182)**

Defendants move to preclude Plaintiffs from presenting evidence, testimony, and arguments regarding misappropriation of any trade secret beyond the 29 analog circuit schematics and 39 digital designs (e.g., Verilog source code) expressly permitted by Magistrate Judge Lloyd's October 12, 2016 order. ECF 262. Defendants argue that they would be severely prejudiced if Plaintiffs were allowed argue misappropriation of trade secrets not covered by this order because Defendants have not had the opportunity to take discovery or get expert testimony on these trade secrets, nor have Plaintiffs identified these trade secrets with sufficient particularity. *Id*. at 5-6. Defendants also argue that not restricting Plaintiffs in this way would result in jury confusion, needlessly consume the Court's resources, and make trial unmanageable. *Id*.

Plaintiffs respond that Magistrate Judge Lloyd's order only pertained to discovery, and cannot operate to limit the scope of Plaintiffs' claims. ECF 294. Plaintiffs also argue that Defendants will not suffer undue prejudice because Defendants had ample notice and opportunity to defend itself against the full 1,116 analog circuit trade secrets that Plaintiffs claim Defendants misappropriated. *Id*. at 3-4. Plaintiffs also maintain that they are entitled to prove misappropriation circumstantially, using the 29 ana0log circuit schematics as examples. *Id*. at 4-5.

Defendants' motion presents the same issue as that of Plaintiffs' Motion in Limine No. 2. Accordingly, for the same reasons given with respect to that motion, Defendants' motion is DENIED.

**IT IS SO ORDERED.**

Dated: July 19, 2017

                                                                                         _____
BETH LABSON FREEMAN
United States District Judge